Cecille **JOHNSON**, Appellant,

v.

**C. A. BROWN, Jr., Individually and as Independent Executor of the Estate of Beatrice Brown, Deceased, Appellee.**

No. 5094.

Court of Civil Appeals of Texas, Eastland.

Dec. 22, 1977.

Rehearing Denied Jan. 19, 1978.

Robert D. Reed, San Antonio, for appellant.

Patrick J. Pape, San Antonio, John G. Murray, Pearsall, for appellee.

McCLOUD, Chief Justice.

The issue discussed is the admissibility of a ledger sheet under the business records exception to the hearsay rule.

Plaintiff, Cecille Brown Johnson, sued defendant, C. A. Brown, Jr., Individually and as Independent Executor of the Estate of Beatrice Brown, Deceased, alleging that a tract of land containing approximately 274 acres located in Frio County, was plaintiff's property even though the record title was in the name of Beatrice Brown at the time of her death. Plaintiff alleged the land was conveyed to Beatrice Brown for the purpose of holding title because of plaintiff's marital difficulties, and under the oral agreement between Beatrice Brown and plaintiff, Beatrice Brown would take title by a "gift deed," but would hold the title in trust for the benefit of plaintiff, and Beatrice Brown would reconvey the property to plaintiff at the request of plaintiff. Beatrice Brown was the mother of plaintiff and

defendant. Plaintiff alleged a confidential relationship existed and sought to impose a constructive trust. The land in question was originally the separate property of Beatrice Brown, who joined by her husband, C. A. Brown, Sr., executed a deed dated December 28, 1960, giving the property to plaintiff. The purpose of this transfer was to equalize between the two children money advances previously given to defendant by Mr. and Mrs. Brown. On July 15, 1967, plaintiff executed a deed to her mother purporting to reconvey, by gift, the 274-acre tract. This is the conveyance in issue.

The jury found in Special Issue 1 that on July 15, 1967, and prior thereto, no confidential relationship existed between plaintiff and her mother, and in Special Issue 2, that plaintiff did not make the July 15, 1967 deed to her mother for the agreed purpose of holding title to the land in the mother's name for safekeeping for plaintiff. Judgment was entered for defendant and plaintiff has appealed. We reverse and remand.

Beatrice Brown died in 1974 leaving plaintiff and defendant as her two surviving children. Her husband, C. A. Brown, Sr., died in 1972 or 1973. Under the terms of Beatrice Brown's will, all of her property was left in equal shares to her two children. Defendant included the property in question in the inventory of the Estate of Beatrice Brown, Deceased.

Plaintiff contends the court erred in admitting Exhibit 5A, over plaintiff's proper objection, because the exhibit constituted hearsay evidence and defendant did not meet the requirements of Tex.Rev.Civ. Stat.Ann. art. 3737e (1951). We agree.

Article 3737e provides in part:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representa-

tive of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

Plaintiff argues that defendant failed to prove any of the essential elements to establish the exception to the hearsay rule. The party offering the evidence must prove each of the essential elements set out in the statute. *Logan v. Grady*, 482 S.W.2d 313 (Tex.Civ.App.—Fort Worth 1972, no writ).

We will discuss only paragraph (c) of the above quoted statute which expressly requires a showing that the record of an act, event or condition be made at or near the time of the act, event or condition. Defendant wholly failed to meet this requirement.

Exhibit 5A is a sheet from a "ledger" kept for many years by C. A. Brown, Sr. Defendant, C. A. Brown, Jr., testified that the writing on the sheet was his father's handwriting. The printed sheet contains the name "Cecille" at the top and the following handwritten entries.

| DATE | ITEMS | | DEBITS | DATE | ITEMS |
|---|---|---|---|---|---|
| 1960 | Bal. note bill | | 2000.00 | | |
| | Cows & calves sold | | 2200.00 | | |
| 1961 | Cks & Lease | | 1309.37 | | |
| 62 | " " " | | 794.78 | | |
| 63 | " " | & Savings | 2051.54 | | |
| 64 | " " | | 2260.28 | | |
| 65 | " " | & Car | 4388.85 | | |
| 66 | " " | | 1806.00 | | |
| 67 | " " | | 2108.54 | 18,919.36 | 1968 |
| | | | | 1967 | Retd Farm to Balance |

| | 1967 | | | | | |
|---|---|---|---|---|---|---|
| | Taxes Co & State | 40.40 | | 1968 | Lease Pd 275.00 | 550.00 |
| | " School | 56.61 | | 1969 | Oil Lease | 424.50 |
| | (Well & Work) | 1149.69 | | | | |
| 1968 | Co & State | 40.80 | | 1969 | Land Lease | 550.00 |
| | School | 56.61 | | | Pd 225.00 | |

There is no evidence as to when any of the information shown above was written on the ledger sheet. Defendant stated he first saw the ledger sheet about 1970.

In Defendant's Third Amended Answer, he made the following allegation:

"Answering further, Defendant alleges that the conveyance from CECILLE BROWN JOHNSON to BEATRICE CAMPBELL BROWN by Deed recorded in Volume 233, Page 388 of the Deed Records of Frio County, Texas, was supported by a good and valuable consideration in that C. A. BROWN and wife, BEATRICE CAMPBELL BROWN, during the years from 1960 through 1967, made gifts to the said CECILLE BROWN JOHNSON of cash in an amount somewhere between $20,000.00 and $30,000.00. Defendant would further show that the said CECILLE BROWN JOHNSON was not financially able to repay these funds and that the said C. A. BROWN AND BEATRICE CAMPBELL BROWN requested that CECILLE BROWN JOHNSON reconvey the 274 acres of land in question to them in order to cancel said indebtedness."

Prior to the introduction of Exhibit 5A into evidence, the defendant, C. A. Brown, Jr., testified on direct examination as follows:

"Q Now, Mr. Spencer had asked you about any personal knowledge about any advances that your father had made or your father and mother had

made to Cecille and you said you didn't know of any of your own personal knowledge, is that correct?

A Oh, I knew they was helping her but I couldn't tell you how much or how.

Q Are there any records to indicate how much?

A Yes, he had his records.

Q Did he keep a general ledger sheet for—

A He kept a ledger.

Q And that's where he kept in there about how much you had drawn out over and above what you had put into it?

A Yes, there's a—It's a list of every check that I have written back to 1952 or something like that up until when he got sick.

Q Did he keep any ledger sheets on Cecille?

A He started keeping those somewhere back in the last of the '50's or 1960. I don't remember exactly when this started.

Q Do you know of your own knowledge whether your parents were helping Cecille and Bill Johnson and their children at that time?

A Oh, yes, they were helping them.

Q And from the period of 1960 to 1967 are there any records to indicate what advances have been made to Cecille?

A Yes, he had a record of that.

Q Do you know how much it showed?

MR. SPENCER: Just a minute. Your Honor, I object to that.

THE COURT: Yes, the records will be the best evidence.

Q (By Mr. Pape) Do you have that ledger with you?

A It's in my pickup.

Q Okay. We will bring it in. That was your father's general ledger that he kept?

A Yes, sir.

THE COURT: Is that one in the pickup having Cecille's account, is that the same ledger that has your account?

THE WITNESS: Yes, sir.

THE COURT: So when you get it it will all be in the same book?

MR. PAPE: Yes, sir.

THE COURT: Not two books, but one, is that right?

THE WITNESS: One book.

Q (By Mr. Pape) Would you say he kept pretty detailed accounting records of who got what?

A Yes, sir.

Q And do you know of your own personal knowledge of the fact that your father made those entries in those books?

A Well, I used to make entries in the book when I worked in the store but I haven't made any entries in there in maybe twenty, twenty-five years.

Q Did you make any entries regarding Cecille?

A No.

Q Did your father make any entries regarding Cecille?

A Yes.

Q Are you familiar with his handwriting?

A Oh, yes.

Q And familiar with the fact that he kept this general ledger?

A Sure.

Q That was his second important book to the Bible, I assume.

A Well, he just wrote everything down.

Q Now, during the period, I believe,—Do you know when Cecille was first divorced?

A Oh, it was somewhere around 1960. I don't know. I don't remember.

Q After she was divorced do you know whether or not your parents helped her in connection with the raising of her and the children?

A Yes.

Q And did they give her money and other property?

A They helped her. I don't know exactly whether it was in the form of money or what, but they helped.

Q Whatever the ledger shows would be the amount that they helped her?

A Yes."

Defendant further testified on cross-examination:

"Q All right. And is it the truth you testified on your deposition in this case on May the 28th, 1976, in answer to these questions, the following testimony on Page 103, beginning with Line 9:

'Question: All right. So you don't —you did not know the date of the reconveyance from Cecille back to your mother?

'Answer: No.

'Question: Okay. Now, you didn't know under what circumstances it might have been conveyed or what the discussions were, if any?

'Answer: No.

'Question: Do you know whether or not there were any discussions?

'Answer: No.'

Is that the truth?

A That's it.

. . . . .

Q So the long and short of it is you have no information on that subject that I asked you about from your mother as to the transaction between Cecille and her?

A No, I wasn't there. I didn't—I wasn't in on that."

The statement on Exhibit 5A "1967 Retd. Farm to Balance" is particularly significant and harmful to plaintiff. We think the jury probably improperly determined from Exhibit 5A that Mr. and Mrs. Brown had made advances of at least $18,919.36 to plaintiff from 1960 to 1967 and the reconveyance of the land in question on July 15, 1967, was to "balance" those advances.

C. A. Brown, Jr., testified that he had no personal knowledge regarding the conveyance. He stated his parents helped plaintiff and in answer to a question, testified that, "Whatever the ledger shows would be the amount that they helped her." Much emphasis was placed upon the ledger sheet and what it showed. We have no doubt but that the jury placed great significance upon the inadmissible evidence in answering the two issues submitted.

Since defendant failed to comply with the requirements of Article 3737e, the exhibit constituted inadmissible hearsay evidence. Defendant argues that the court's limiting instruction prevented the evidence from being inadmissible. We disagree. The jury was instructed that they could consider the matters contained on the sheet concerning Cecille in "rebuttal", as to "advancements" made by Mr. and Mrs. Brown.

After considering the entire record, we hold that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. Judgment of the trial court is reversed and the cause is remanded. In view of our disposition, we have not discussed plaintiff's other points of error.