**TEXAS EMPLOYER'S INSURANCE ASSOCIATION, Appellant,**

v.

**Frutoso SAUCEDA, Appellee.**

**No. 16703.**

Court of Appeals of Texas, San Antonio.

June 2, 1982.

Rehearing Denied July 12, 1982.

John D. Carlos, San Antonio, for appellant.

James L. Branton, James A. Hall, San Antonio, for appellee.

Before ESQUIVEL, CANTU and BASKIN, JJ.

## OPINION

CANTU, Justice.

This is a workmen's compensation case. The trial court rendered judgment upon jury findings allowing Sauceda a recovery for the total and permanent loss of use of his leg below the knee.

Frutoso Sauceda, appellee, was injured on November 4, 1977, during the course of his employment as a welder's helper at the Johnson Drilling Company in Hondo, Texas. Sauceda, a 48 year-old man with a third grade education, was injured while working on a drilling rig as he and another employee were pulling pipe out of the ground and breaking the joints loose with a pipe wrench. In loosening one of the pieces of pipe, the wrench slipped, causing Sauceda to fall on his back. The other employee fell on top of Sauceda thus injuring Sauceda's right foot and fracturing bones in his ankle.

Sauceda was driven to a Hondo hospital by his employer, Thomas Johnson, where he was examined at the emergency room by Dr. Parker Meyer, a local family physician. After the right ankle was x-rayed, a plaster splint was applied to the right leg and ankle and Sauceda was transferred to a hospital in San Antonio where he was treated by Dr. Fred Olin, an orthopaedic specialist.

Sauceda instituted his action to recover benefits for total and permanent incapacity. He pleaded an injury to his right ankle and injury to his body generally. The insurance carrier, hereinafter referred to as TEIA, specifically pleaded that Sauceda's injury was confined to the right leg below the knee and asserted that permanent disability, if any, was limited to a small percentage of loss of use of the right leg. TEIA also asserted that Sauceda's incapacity was tem-

porary only or was limited to a small degree of permanent partial incapacity.

The jury found that Sauceda had received an injury to his right leg below the knee in the course of his employment on or about November 4, 1977, and that the injury was a producing cause of the total loss of use of his right leg below the knee. The jury further found that the beginning date of the total loss of use was November 4, 1977, and that the loss was permanent. Based upon the jury findings, the trial court entered judgment for total loss of use of a foot.

TEIA brings forth two points of error. Initially TEIA contends that the trial court erred in excluding from evidence a doctor's letter [1] offered to prove that Sauceda's loss of use of his ankle was less than total. Additionally, TEIA asserts that there is no evidence or that the evidence is insufficient to support the jury's finding of permanent total loss of use of Sauceda's ankle. TEIA also claims the jury's finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The position taken by TEIA during trial and now advanced on appeal is that Sauceda's total loss of use was not permanent.

Sauceda's case consisted of testimony of Dr. Parker Meyer, the initial treating physician, the hospital records as summarized by Dr. Meyer, as well as his own testimony. Dr. Meyer examined Sauceda four days before the trial. He testified at length as to the nature and extent of Sauceda's injuries and described them as several fractures involving the ankle and other non-bone ankle injuries. He described a fracture of the tibia, the main weight-bearing bone of the ankle, the fragmenting of the fibula and the disruption of the supportive structures and tissue from the tearing of the ligaments. He further outlined the procedures employed by Dr. Fred Olin in attempting to restore the ankle to its original position by the use of heavy wiring and screws and explained that a tearing of hyaline carti-

lage, a smooth surface within the joint, sets up a long term degenerative process in the joint, causing wear and tear, which eventually causes osteoarthritis or degenerative joints. He stated that an operation to replace the tip of the tibia was unsuccessfully attempted.

Dr. Meyer testified that recent x-rays showed that Sauceda did not have a normal amount of space in his ankle joint, that such lack of normal space would be painful and would cause stiffening of the joint. He further expressed the opinion that the condition of Sauceda's ankle was a permanent disabling condition of the foot and that the right lower foot would not function normally.

Dr. Meyer further stated that he was aware Sauceda had returned to his same job and had been working for approximately two years. However, he cautioned that Sauceda should not be working where he was going to be walking or using his ankle as a weight-bearing joint because of the nature of the injury and the difficulty in reducing the fracture. He concluded that a continued use of the foot, as a weight-bearing member, under working conditions, would only worsen the condition. When given the definition of total loss of use, Dr. Meyer testified that Sauceda met that definition.

Sauceda testified that seven months after the accident, he returned to his same job as a welder's helper and continued to work eight hours a day, five days a week, earning $3.25 per hour, a rate slightly higher than he was paid before his injury. He testified that the injury had affected the way he walked, that he was unable to squat, to climb ladders or to run. He stated he now had difficulty with certain tasks and movements and at times his leg was stiff and painful, especially when walking on unlevel surfaces.

Sauceda exhibited his swollen ankle to the jury and explained that the swelling had persisted since the date of the injury

1.  TEIA has always characterized this letter as a medical report and continues to do so on ap-    peal.

with the severity of the swelling increasing during the working day. Sauceda demonstrated his walk before the jury in the presence of his employer who later acknowledged that Sauceda walked the same way on the job.

According to Sauceda, he is no longer able to do everything that he is supposed to do as a helper for Johnson Drilling Company. In particular, he no longer is able to do heavy lifting, although the job calls for the constant lifting of heavy pipes. On at least one occasion, Sauceda was taken home from work and was out for three days due to pain in the ankle. Sauceda felt that his employer was satisfied with his work performance in spite of his impairment and acknowledged his willingness to continue discharging his daily duties by giving a full day's work for a full day's pay.

In support of their position that Sauceda did not suffer permanent loss of use of his right leg below the knee, TEIA offered the testimony of Sauceda's employer, Thomas Johnson. Johnson testified that Sauceda's job had been held open for him until his return some seven months after the date of the injury because Sauceda had been a good, loyal and faithful worker prior to the injury. He also verified that Sauceda's foot remains grotesquely swollen during the day and that no employment physical examination was required upon Sauceda's return to work.

TEIA sought to offer a letter from the treating physician, Dr. Olin, which was obtained through written interrogatories propounded by TEIA.[2] Pursuant to the written interrogatories, Dr. Olin supplied all written records in his possession in connection with treatments or examinations of Sauceda, including bills, reports, office notes and all instruments in writing concerning Sauceda.

At trial TEIA sought to offer in evidence a letter dated September 20, 1978, written by Dr. Olin to a representative of TEIA. The letter recites:

September 20, 1978
Phil West
Texas Employers Insurance Association
9600 Datapoint
San Antonio, TX 78229
Re: Mr. Frutoso Sauceda
06–77–068068
Dear Mr. West:

I feel that Frutoso Sauceda has a ten percent permanent loss of function of the ankle, as a result of his on the job injury. I further feel that he has an excellent chance of developing osteoarthritic changes in this ankle in the future, and that this should be considered in making your disability ratings. I cannot prognosticate the future, so I do not know if this will happen to Mr. Sauceda.

For your information I am enclosing copies of pages 1 and 2 of a leaflet entitled Manual for Orthopaedic Surgeons in Evaluating Permanent Physical Impairment.

I call your attention specifically to the difference between disability and impairment, as defined in those three paragraphs at the top of page 2.

Since Mr. Sauceda reported to me, at the time of his most recent visit in my office on May 23, 1978, that he was back at work and doing well, it would seem that his impairment has not caused him to be disabled. However if the condition of his ankle deteriorates, it is certainly possible that he might become disabled in the future.

I hope this is suitable for your purposes.
Sincerely yours,
Fred H. Olin, M.D.
FHO/ho

Appellee objected to the admission of the letter on the ground that the proper predicate had not been complied with under Tex. Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp. 1980). He also complained that admission of the exhibit would deprive him of cross-

2. Written interrogatories have been commonly used in the trial practice to obtain hospital records for discovery purposes, and upon trial, have been employed to obviate the necessity for the records librarian being present. *Dulak v. Dulak*, 496 S.W.2d 776 (Tex.Civ.App.—Austin 1973), aff'd in part and rev'd in part, 513 S.W.2d 205 (Tex.1974).

examination of Dr. Olin and that the exhibit contained opinions which were speculative and which were opinions about which doctors can and do disagree.

Although appellee objected to all of the records obtained from Dr. Olin, TEIA sought to offer only the letter heretofore reproduced. The trial court excluded the letter from evidence and TEIA perfected its bill of exception. None of the other documents comprising Dr. Olin's records were included in the record as part of the bill of exception and, therefore, they are not before us.

TEIA characterizes the letter in question as a medical report qualifying as a business record and argues that its probative value lay in its proof that Sauceda's loss of use was less than total and permanent, not in its proof of a specific percentage of loss of use. They also argue that the letter contains Dr. Olin's diagnosis of Sauceda's loss of use of his ankle as being less than total and that this diagnosis is one capable of being made within "reasonable medical certainty."

We think TEIA's characterization of Dr. Olin's letter as a diagnosis of appellee's condition is erroneous. The term diagnosis has been defined as the study and consideration of signs and symptoms—the evidence of disease—to determine the nature of the disease, so that it may be treated in the right way. It is the science involved in the recognition of disease.[3] *See* B. Maloy, M.D., *Medical Dictionary for Lawyers*, (2d ed. 1951); Stedman's Medical Dictionary, (3d unabr. lawyers ed. 1972); *See also Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941); *People v. Jordan*, 172 Cal. 391, 156 P. 451 (1916).

Nothing in the letter purports to assume the status of a diagnosis of appellee's injury. In fact, the diagnosis of appellee's injury was never an issue. All parties readily admitted that Sauceda sustained a fracture to his right ankle. The issues drawn by the pleadings, proof and arguments all revolve around the extent of the injury and amount of incapacity, an area clearly lending itself to disagreement among medical experts. We view the letter as an opinion of an expert on the most critical issues surrounding the instant controversy, the question of extent of impairment.

Texas Revised Civil Statutes Annotated art. 3737e (Vernon Supp.1980) creates an exception to the hearsay rule by allowing records, including hospital and medical records, to be entered into evidence. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324 (Tex. 1968); *Loper v. Andrews, infra*, n.3; *Travis Life Ins. Co. v. Rodriguez*, 326 S.W.2d 256 (Tex.Civ.App.—Austin), writ ref'd n. r. e. per curiam, 160 Tex. 182, 328 S.W.2d 434 (Tex.1959). This exception rests upon a "circumstantial guarantee of trustworthiness" inherent in records touching daily upon affairs of life and death. The business of hospitals and doctors is caring for patients and the nature of this business requires the systematic keeping of numerous books and records essential to proper care. These records reflect the day-to-day operation and include histories, diagnoses and treatments. During the day-to-day routine of the care of the patients, physicians, as well as others, rely upon these records of their own actions as well as the records of the actions of others.

The trustworthiness of these types of records is fully substantiated by the motives of persons normally making the entries. Hospital personnel may be strongly motivated by humanitarian and professional reasons for accuracy in recording daily events, thus

---

**3.** Our Supreme Court in *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966) defined medical diagnosis as the analysis of the cause and nature of a patient's condition. In doing so, it classified diagnoses into three broad types.

(1) Where the medical facts may be such that the medical condition is apparent and observable by all;

(2) Where the facts and findings may be such that an expert interpretation is required but the medical condition is nevertheless well recognized and reasonably certain; and

(3) Where the facts and findings may be such that their meaning and the resulting medical opinion as to the patient's condition rests primarily in expert medical opinion, conjecture and speculation.

there is usually every reason to expect reliability in making entries. *Travis Life Ins. Co. v. Rodriguez, supra; See also New York Life Ins. Co. v. Taylor*, 147 F.2d 297 (D.C. Cir.1945) (dissenting opinion).

An examination of the letter written by Dr. Olin leads us to the singular conclusion that it was prepared in response to a request by a representative of TEIA. In the absence of Dr. Olin's remaining records, we are unable to ascertain the reason for the letter's existence. If the letter was written solely in response to a request by TEIA the instrument does not qualify as a routine entry in appellee's medical history.

Article 3737e in pertinent part provides: Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrance of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

■ In order to avail oneself of the hearsay exception under article 3737e the party offering the evidence must prove each of the essential elements set out in the statute. *Logan v. Grady*, 482 S.W.2d 313 (Tex.Civ. App.—Fort Worth 1972, no writ); *See also Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298 (Tex.1962); *Johnson v. Brown*, 560 S.W.2d 763 (Tex.Civ.App.—Eastland 1977, writ ref'd n. r. e.).

Applying the requisite test to the letter of Dr. Olin, we doubt that it passes muster under section 1(b) of the statute. Clearly the letter is not evidence of a routine entry made in the regular course of Dr. Olin's business. On its face the letter is an attempt to convey an opinion which has been elicited by an outside interested source. There is no showing in the record that the evaluation would have ever been made but for the request from TEIA's representative.

In addition, the letter was sent approximately four months after Dr. Olin's last examination of Sauceda, therefore the letter does not comply with section 1(c). Neither are we impressed with TEIA's argument that the letter was *maintained* as a part of Dr. Olin's normal business procedure bringing it under section 1(a).

■ Assuming, *arguendo*, that TEIA's proffer of Dr. Olin's letter complied with the predicate requirements of article 3737e, the tendered exhibit would still be inadmissible if the opinion consisted of an "expert conjecture" not resting on demonstrable medical facts about which there could be a genuine dispute among doctors. *Otis Elevator Co. v. Wood, supra; Loper v. Andrews, supra*, n.3; *Reed v. Aetna Casualty & Surety Co.*, 535 S.W.2d 377 (Tex.Civ.App. —Beaumont 1976, writ ref'd n. r. e.). This exception to the hearsay rule, created by article 3737e, is deemed justified notwithstanding the deprivation of the right of cross-examination if the diagnosis or information records a condition resting in reasonable medical certainty, *Loper v. Andrews, supra*, n.3; *Dulak v. Dulak, supra*, n.2, or upon which competent physicians would normally agree. *Taylor v. Anderson*, 474 S.W.2d 541 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.); *Eubanks v. Winn*, 469 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.). But an opinion based upon expert medical opinion, conjecture and speculation will not justify the waiver of the valuable right of cross-examination, particularly where the entries are genuinely disputed. *Reed v. Aetna Casualty & Surety Co., supra.*

■ Having concluded that Dr. Olin's letter does not constitute a diagnosis of Sauceda's injury we must next consider whether the information contained in the letter records a condition resting in reasonable medical certainty. Aside from evaluating Sauceda's injury as a ten percent *perma-*

*nent* loss of function, Dr. Olin's letter offers no basis for its opinion other than a reference to a leaflet entitled "Manuel for Orthopaedic Surgeons in Evaluating Permanent Physical Impairment," which has not been made a part of appellant's bill of exception for our review. While the opinion contained in the letter attempts to assign a specific loss of use to appellee's injury it also refuses to speculate on the extent of the loss of use and invites TEIA to arrive at its own disability rating.[4] We hold that the information contained in Dr. Olin's letter does not record a condition resting in reasonable medical certainty. We further hold the information recorded in the letter to be entirely conjectural, speculative and an attempt to delegate the opinion forming process, on the very issues being disputed, to an agent of TEIA.

By reply brief TEIA urges that Dr. Olin's letter was admissible for the further reason that the letter constituted a report required by Tex.Rev.Civ.Stat.Ann. art. 8306 § 7 (Vernon Supp.1981) to be made *when requested.* We are not persuaded by TEIA's argument to depart from our announced position for the following reason.

Article 8306 § 7 holds in pertinent part:

Provided that any physician or chiropractor rendering medical or chiropractic care to any injured worker *shall* render an initial report *as soon as practical* indentifying the injured worker and stating the nature and extent of the injury and thereafter shall render subsequent reports reasonably necessary to keep the status of the claimant's condition known. (Emphasis supplied.)

We do not construe the pertinent part of article 8306, section 7 to permit the making of a report by the physician *upon request only.*[5] Nor do we interpret the statute as granting the physician the authority to delegate his duty of assessing the extent of disability to the insurance carrier.

We remain convinced that the letter was not admissible under any theory advanced by TEIA at trial. The trial court did not err in excluding Dr. Olin's letter as evidence. Appellant's first point of error is overruled.

We now turn to TEIA's contention that the trial court erred in overruling its amended motion for new trial because there is no evidence or insufficient evidence to support the jury's finding that Sauceda's total loss of use of his leg below the knee was permanent, and that such finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

■ In order to recover compensation for total loss of use of a specific body member, the claimant must establish either that it no longer has any substantial utility as part of the body, or that it is so injured that he cannot procure and retain employment requiring the use of that member. *Travelers Ins. Co. v. Seabolt,* 361 S.W.2d 204 (Tex. 1962); *Hardware Dealers Mutual Fire Ins. Co. v. Ovalle,* 470 S.W.2d 241 (Tex.Civ.App. —Corpus Christi 1971, no writ). Should the evidence be sufficient in law to satisfy either of the two requirements the judgment should be affirmed, otherwise a reversal must be ordered. *Travelers Ins. Co. v. Seabolt, supra.*

The burden was upon Sauceda to establish the extent and duration of incapacity, which would necessarily include the beginning and ending dates of same, or at least the beginning date of permanent incapacity. *Texas Employers' Ins. Ass'n v. Thames,* 236 S.W.2d 203 (Tex.Civ.App.—Fort Worth 1951, writ ref'd).

TEIA relies upon *Travelers Ins. Co. v. Seabolt, supra, Hardware Dealers Mutual Fire Ins. Co. v. Ovalle, supra,* and *Harris v. Texas Employers' Ins. Ass'n,* 447 S.W.2d

---

4. We doubt that Dr. Olin would maintain invitations for independent evaluations of disability as a part of his normal business procedures. We further question the qualifying of such an invitation as a recordation of a condition resting in reasonable medical certainty.

5. We are not inclined to subscribe to appellant's argument that a solicited letter prepared some four months after the last examination of appellee by Dr. Olin complies with the statute's requirement of "as soon as practical".

211 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.).

In *Travelers Ins. Co. v. Seabolt, supra,* the claimant returned to his job within one week of the injury and continued until the job was finished. Although able to work, Seabolt remained unemployed for a period of time, subsequently obtaining employment lasting steadily up to the date of trial. Seabolt thus was able to obtain and maintain employment requiring the use of the injured member.

In *Hardware Dealers Mutual Fire Ins. Co. v. Ovalle, supra,* the claimant returned to work about two months after his injury and resumed his duties. Between the date of his return to work and the trial date the claimant voluntarily left his employment and obtained and maintained employment on approximately five or six occasions, each time voluntarily leaving his employment for reasons not related to his injury. Obtaining and maintaining employment requiring the use of his injured leg was never a problem for Ovalle. In fact, Ovalle was able to climb trees and ladders in addition to performing roofing work, tree trimming and plumbing. Although medical evidence was offered by Ovalle, the court was not influenced by it since there was a total absence of testimony that Ovalle had been disabled continuously since the date of injury.

In *Harris v. Texas Employers' Ins. Ass'n, supra* the court addressed the issue of legal insufficiency versus factual insufficiency. Although cited by TEIA in its brief, there is no attempt to explain its applicability to the instant case. While being in accord with the opinion upon the facts there related, we fail to see how the case affects our disposition of Sauceda's case.

■ We think the instant case is similar to *Traders & General Ins. Co. v. Maxwell,* 142 S.W.2d 685 (Tex.Civ.App.—Texarkana 1940, writ dism'd judgmt cor.) where the claimant suffered an injury to his right leg and kneecap. Most of the symptoms exhibited by Maxwell are identical to those claimed by Sauceda. The diagnosis is practically identical, as is the prognosis. In each case medical opinion declared the in-

jured member's use a total loss. In each case claimants were advised by their physicians against work requiring the use of the injured member as a weight-bearing joint. Both claimants returned to work at their previous employment under less than normal conditions and under extremely guarded conditions with little hope of improvement to the injured member. We think the court therein correctly recites the applicable rule of law where it states:

> The fact that the claimant may perform work not requiring use of his leg, such as firing a boiler in the manner here testified to, and that he can walk without use of cane, crutch or brace, when to do so causes him pain, swelling, inflammation, and further weakening of the knee, of which condition it is testified there is no chance of improvement, does not, as contended, show as a matter of law that he has not suffered permanent total loss of the use of the leg within the meaning of Article 8306, sec. 12 R.S. [citations omitted]

142 S.W.2d at 690.

In the instant case Sauceda was not afforded the luxury of working while sitting when he returned to his former employment. We see no reason to penalize him because he continued working on his feet in extreme pain and at the expense of experiencing grotesque swelling of his foot each day. Sauceda's permanent and total loss of use of his foot was no less than Maxwell's total loss of use of his leg, nor was it any less permanent.

We cannot agree with TEIA's contention that the record is without any evidence to support the jury's finding that Sauceda's total loss of use of his leg below the knee was permanent. A review of the evidence most favorable to the jury finding convinces us that TEIA's contention of no evidence is without support, nor can we accede to the assertion that there is insufficient evidence to support the jury finding.

We recognize that there is no fixed or definite rule of evidence by which a claimant in a workmen's compensation case is

required to establish the fact that he has suffered an injury that caused permanent disability. *Liberty Universal Ins. Co. v. Gill*, 401 S.W.2d 339 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). Proof of duration and the extent of the disability resulting from injury is, like the assessment of damages in a personal injury action, at best an estimate which must be determined by a jury from all of the pertinent facts before it. *Texas Employers' Insurance Ass'n v. Washington*, 437 S.W.2d 340 (Tex. Civ.App.—Dallas 1969, writ ref'd n. r. e.). Permanent disability may reasonably be inferred from circumstantial evidence produced by lay witnesses and this is true even though such evidence is contradicted by the testimony of medical experts. *Travelers Insurance Co. v. Wade*, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e). There was, in fact, little or no evidence contradicting Sauceda's or Dr. Meyer's testimony. The only evidence before the jury on the issue of permanency was brought forth by Sauceda through Dr. Meyer's testimony. Any doubt we may have as to whether the evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. *Travelers Insurance Co. v. Arnold*, 378 S.W.2d 78 (Tex.Civ.App.—Dallas 1964, no writ).

We have reviewed the entire record, including the evidence which supports the verdict as well as that which is contrary to it, and after weighing this evidence we are of the opinion that the jury finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong. We therefore overrule TEIA's challenge to the sufficiency of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Accordingly, the judgment of the trial court is affirmed.