Stanley **FREEMAN**, Appellant,

v.

**AMERICAN MOTORISTS
INSURANCE COMPANY,**
Appellee.

No. 01–00–00935–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 26, 2001.

Robert A. McAllister, Houston, for Appellant.

Christopher James Ameel, Charles Edwin Morse, Harris & Harris, Austin, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and NUCHIA.

## OPINION

HEDGES, Justice.

Plaintiff/appellant, Stanley Freeman, sued defendant/appellee, American Motorists Insurance Company (AMIC), to set aside a compromise settlement agreement based on AMIC's alleged fraud and mis-

representations. The trial court rendered summary judgment for AMIC. We affirm.

## Background

Freeman was injured on November 3, 1989, in the course and scope of his employment, when the turnbuckle from a trash dumpster broke loose and struck him in the head. AMIC was the employer's workers' compensation insurance carrier. Freeman filed a notice of injury and claim form with the Industrial Accident Board. The parties signed a compromise settlement agreement during a prehearing conference on February 20, 1990. The Industrial Accident Board[1] approved the agreement on March 7, 1990, ordering that AMIC pay $1,500 to Freeman and $500 attorney's fees to Freeman's attorney. AMIC was also ordered to pay Freeman's reasonable and necessary medical treatments until February 13, 1991.

Almost nine years later, on April 28, 1999, Freeman sued AMIC to set aside the compromise settlement agreement based on AMIC's alleged fraud and misrepresentations. AMIC moved for summary judgment, arguing that: (1) the fraud claim was barred by the applicable limitations period; (2) there was no evidence of legal disability; and (3) there was no evidence of fraud or misrepresentations. On May 22, 2000, the trial court rendered summary judgment for AMIC based on the statute of limitations.

Freeman contends that the trial court erred in rendering summary judgment because (1) Freeman's legal disability tolled the statute of limitations and (2) there is evidence of AMIC's misrepresentations. AMIC contends that the trial court erred in overruling AMIC's motion to strike

Freeman's response to the motion for summary judgment.

## Standard of Review

To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *See Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). If a defendant moves for summary judgment on the basis of an affirmative defense, it has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). In conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *See id.*

## Statute of Limitations

In his first point of error, Freeman contends that the trial court erred in rendering summary judgment because his legal disability tolled the statute of limitations.

The statute of limitations for a fraud action is four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(4) (Vernon 2001). In this case, the limitations period began to run on the date the Industrial Accident Board approved the compromise settlement agreement, or on March 7, 1990. *See Brooks v. Lucky,* 308 S.W.2d 273, 276 (Tex.Civ.App.—Beaumont 1957, writ ref'd n.r.e.); *see also Brannam v. Texas Employers' Ins. Ass'n,* 151 Tex. 210, 248 S.W.2d 118, 119 (1952). Thus, Freeman had four years from March 7, 1990, or

---

1. The Industrial Accident Board was renamed the Texas Workers' Compensation Commission effective April 1, 1990. Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 17.01, 1989 Tex. Gen. Laws 1, 115, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5(2), 1993 Tex. Gen. Laws 987, 1273.

until March 7, 1994, to file suit. It is undisputed that he did not file suit until over five years later, on April 28, 1999.

### Unsound Mind Tolling Theory

Freeman contends the statute of limitations was tolled because he was legally disabled according to section 16.001(a)(2) of the Civil Practice and Remedies Code, which states that a person is under a legal disability if the person is of "unsound mind." TEX. CIV. PRAC. & REM.CODE ANN. § 16.001(a)(2) (Vernon Supp.2001). If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period. TEX. CIV. PRAC. & REM.CODE ANN. § 16.001(b) (Vernon Supp.2001). A disability that arises after a limitations period starts does not suspend the running of the period. TEX. CIV. PRAC. & REM.CODE ANN. § 16.001(d) (Vernon Supp.2001).

■ Generally, persons of unsound mind and insane persons are synonymous. *Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 548 (Tex.App.—Austin 1995, no writ). The term "unsound mind" refers to a legal disability, although it is not limited to persons who are adjudicated incompetent. *Casu v. CBI Na–Con, Inc.*, 881 S.W.2d 32, 34 (Tex.App.—Houston [14th Dist.] 1994, no writ). The limitations period is tolled for persons of unsound mind for two reasons: (1) to protect persons without access to the courts and (2) to protect persons who are unable to participate in, control, or understand the progression and disposition of their lawsuit. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex.1993); *Hargraves*, 894 S.W.2d at 548.

■ To prevail on the unsound mind tolling theory, Freeman had to produce either (1) specific evidence that would enable the court to find that he "did not have the mental capacity to pursue litigation" or (2) a fact-based expert opinion to that ef-

fect. *See Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex.App.—Austin 1999, pet. denied); *see also Porter v. Charter Med. Corp.*, 957 F.Supp. 1427, 1438 (N.D.Tex.1997) (applying Texas law).

### Summary Judgment Evidence

To establish an unsound mind, Freeman's response to the motion for summary judgment relied on three doctors: (1) Dr. Charles Covert; (2) Sheila Jenkins, Ph.D.; (3) and Dr. Cyrus Sajadi.

The first and second doctors did not specifically opine that Freeman lacked the mental capacity to pursue litigation. First, Dr. Covert diagnosed Freeman with a "major depressive disorder with mood congruent psychotic features" and a "chronic pain syndrome from muscoskeletal injuries." Second, Dr. Jenkins stated that Freeman was "severely depressed" with reading and math disabilities. However, she stated that his "thought processes were logical and coherent," and that he was "in the borderline range of intellectual functioning." She also noted that Freeman could, without any assistance, dress himself, put his shoes on the correct feet, brush his teeth, bathe, tell time, know emergency telephone numbers, and understand denominations of money. Neither Dr. Covert nor Dr. Jenkins suggested that Freeman could not "participate in, control, or understand the progression and disposition" of his lawsuit. *See Ruiz*, 868 S.W.2d at 755; *Porter*, 957 F.Supp. at 1437.

### Dr. Sajadi's Letter

■ However, the third doctor, Dr. Sajadi, did state that Freeman lacked "the mental capacity to comprehend his circumstances and therefore did not pursue litigation." Dr. Sajadi's statement was offered as summary judgment evidence in the form of a one-page letter from Dr. Sajadi to Freeman's attorney, Mr. Robert McAl-

lister. The letter dated May 12, 2000, recites as follows:

Dear Mr. McAllister,

I have had the pleasure of evaluating and treating Mr. Stanley Freeman on May 8, 2000. The following is a short narrative of my evaluation of this patient.

In reviewing the psychological evaluations done on this patient by Charles B. Covert, MD on 2–5–91 and 3–18–91, Pushpa Gummattina, MD on 5–26–93, Sheila A. Jenkins, Ph.D. on 9–3–97, as well as my own observation and evaluation of the patient, it is my professional opinion that Mr. Freeman's condition has remained the same without any significant improvements. He indeed suffers from limited mental capacity secondary to traumatic brain injury, as well as borderline intellectual functioning. Due to the above impairment, Mr. Freeman did not have the appropriate judgment and the mental capacity to comprehend his circumstances and therefore did not pursue litigation for the definite period of time.

If I can be of further assistance regarding this patient, please contact me at the telephone number above.

Sincerely,

Cyrus Sajadi, M.D., P.A.

### Business Record

Freeman offered the doctor's letter under the business record exception to the hearsay rule, which states:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

TEX.R. EVID. 803(6).

Attached to the letter was an affidavit from Dr. Sajadi's custodian of records, attesting that the letter was a transmitted in the regular course of Dr. Sajadi's business. *See* TEX.R. EVID. 803(6), 902(10). We question whether it was in the regular course of business for Dr. Sajadi to draft a letter to a patient's attorney about the patient's condition. In other words, was Dr. Sajadi's letter a business record or was it prepared for the purpose of litigation?

The San Antonio Court of Appeals addressed a similar issue in *Texas Employer's Insurance Association v. Sauceda,* 636 S.W.2d 494 (Tex.App.—San Antonio 1982, no writ). In that workers' compensation case, a doctor's letter to the insurance carrier was inadmissible as a business record because it did not qualify as a routine entry in the claimant's medical history. *Id.* at 498. The court explained that the business of doctors is to care for patients, and the nature of this business requires the systematic keeping of numerous books and records essential to proper care. *Id.* The records reflect the day-to-day operation and include histories, diagnoses, and treatments. *Id.*

Without the doctor's remaining records, the court could not ascertain the reason for the letter's existence, but concluded that it was prepared in response to the insurance carrier's request. *Id.* at 499. "On its face the letter is an attempt to convey an opinion which has been elicited by an outside interested source." *Id.* Because the letter in *Sauceda* was not evidence of a routine entry made in the regu-

lar course of the doctor's business, it was inadmissible as a business record. *Id.*

In this case, Dr. Sajadi's letter to Freeman's attorney was dated May 12, 2000— over 10 years after the cause of action accrued and a mere 10 days before the summary judgment hearing. This time frame indicates a lack of trustworthiness. In the absence of Dr. Sajadi's remaining records, it appears that he wrote the letter solely in response to a request from Freeman's attorney. *See id.* Like the letter in *Sauceda*, the letter in this case, "on its face," is "an attempt to convey an opinion which has been elicited by an outside interested source." *See id.* Dr. Sajadi's letter to Freeman's attorney does not qualify as a routine entry in Freeman's medical history; therefore, it is inadmissible as a business record under rule 803(6).

We conclude that Freeman did not raise a fact issue about whether he suffered from an "unsound mind" to toll the limitations period. The trial court, therefore, did not err in granting AMIC's motion for summary judgment based on the statute of limitations.

The first point of error is overruled.

## Conclusion

We hold that the trial court properly rendered summary judgment based on the statute of limitations. Because the first point of error is dispositive, we need not address Freeman's remaining issue regarding AMIC's alleged fraud and misrepresentations. Nor do we address AMIC's argument regarding its motion to strike Freeman's response to the motion for summary judgment.

We affirm the judgment of the trial court.