DISCO MACHINE OF LIBERAL COMPANY, Aubrey D. Green, Andrew E. Green, Michael B. Green, Dean Knobloch, James M. Haning and Diversified Industrial Service Company, Appellants,

v.

George W. PAYTON, Jr., Appellee.

No. 07–94–0041–CV.

Court of Appeals of Texas, Amarillo.

May 31, 1995.

Rehearing Overruled July 12, 1995.

Law Offices of John Mann, John Mann, Shamrock, Frasier & Frasier, James Clinton Garland, Tulsa, OK, for appellant.

Kasmir & Krage, L.L.P., Martin J. Sweeney, Ben L. Krage, Dallas, Law Offices of E. Dean Roper, E. Dean Roper, Amarillo, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

The proceeding from which this appeal devolved entails a suit by George W. Payton (Payton) to enforce preemptive stock rights under § 2.22–1 of the Texas Business Corporation Act. Disco Machine of Liberal Co. (Disco), Aubrey D. Green, Andrew E. Green, Michael B. Green, Dean Knobloch, James M. Haning, and Diversified Industrial Service Co. (Diversified) effectively ask, on appeal, whether the trial court erred in denying their motion for summary judgment on the basis of limitations. We answer no and affirm the judgment.[1]

## PRELUDE

The sole issues for review concern the interpretation and application of the limitations clause set forth in § 2.22–1 of the aforementioned Corporation Act, *Tex.Bus.Corp. Act Ann.* 2.22–1(C) (Vernon Supp.1995), and Appellants' entitlement to summary judgment as a matter of law. They do not question whether or not Payton's summary judgment motion and concomitant evidence, in and of itself, warranted summary judgment. Nor do they argue that, at the very least, their evidence created a material question of fact warranting trial. Thus, we consider only whether the trial court correctly interpreted the statute and denied Appellants' motion.

## FACTS

The undisputed facts illustrate that on or about August 1, 1985, Diversified sold 355 shares of treasury stock to Disco. At the time of sale, Payton owned approximately 142 shares of Diversified's common stock. Applicable statute, that is, the Texas Business Corporation Act § 2.22–1(A), therefore, entitled him the opportunity to acquire additional shares of Diversified. The latter, however, did not inform Payton of the Disco sale or his preemptive right to obtain more stock.

In April of 1990, Payton demanded that he be allowed to inspect Diversified's books and records. The corporation acquiesced. Upon performing the inspection, agents for Payton discovered the August 1985 stock transaction. Payton then sued on August 1, 1991, to secure, among other things, his proportionate share of Diversified stock pursuant to § 2.22–1(A). Also sought, in the alternative, were a constructive trust, rescission of the sale to Disco, and money damages.

Disco, Diversified, and the other Appellants joined issue and pled limitations and

---

1. The judgment involved herein became final via a severance. The claim was originally included in a petition averring numerous causes of action. Payton moved for summary judgment upon his chose-in-action arising under § 2.22–1 of the Texas Business Corporation Act. Disco respond-ed with its own motion for summary judgment upon the defenses of laches and limitations. After the trial court granted Payton's motion, the claim was severed which rendered the judgment final.

laches. In their view, Payton had to sue no later than August 1, 1989. By his waiting to act until August of 1991, all claims were barred.

Next, Payton moved for summary judgment upon his preemptive rights claim. In turn, the Appellants moved for summary judgment on their aforementioned defenses. With regard to the preemptive rights matter, they specifically argued that limitations expired four years after the August 1985 stock sale, that is, during the first week of August 1989. Payton disagreed. He interpreted § 2.22–1(C) as extending the window for suit to August of 1993, that is, four years after the statutory provision became effective. Though no grounds were mentioned, the trial court found in favor of Payton, implicitly adopting his reading of § 2.22–1(C). It, thus, denied the Appellants' summary judgment and ordered Diversified to allow Payton to buy 78 shares of voting common stock for $1.00 per share and to pay his attorney's fee. Then, the court severed the preemptive rights dispute "for purposes of appeal."

## POINTS OF ERROR ONE AND TWO

In their two points of error, the Appellants contend that the trial court erred in granting Payton's summary judgment and in denying theirs. In their view, the trial court's construction of § 2.22–1(C), allowing suit within four years of the statute's enactment regardless of whether the claim accrued prior thereto, was "ridiculous." We disagree and overrule the two points.

Enacted and effective as of August 28, 1989, § 2.22–1(C) of the Texas Business Corporation Act states that an action against the corporation, its directors, officers, agents or shareholders "on account of any violation of any preemptive right" may not be initiated unless done so within the earlier of

> [o]ne year after the date on which written notice is given to each shareholder whose preemptive right was violated ... which notice shall be mailed to the shareholder ... inform[ing] the shareholder that the issuance, sale, or other distribution of

those shares was in violation of the preemptive right ...; and

> [f]our years after the date on which the corporation issued, sold or otherwise distributed those shares ... or the effective date of this provision, whichever is later.

*Tex.Bus.Corp.Act Ann.* § 2.22–1(C) (Vernon Supp.1995). These words were read literally by the court in reaching the decision it did; shareholders decrying the denial of preemptive rights had to sue within one year of the date the corporation notified them in writing of the violation or, if that did not occur, within four years from either the date the corporation distributed the stock or the act became effective, whichever was later.

■ The accuracy of the court's literal interpretation of the provision depends upon several factors. The first and foremost demands that courts interpret statutes commensurate with their legislative intent. *Harris County Dist. Attorney's Office v. J.T.S.,* 807 S.W.2d 572, 574 (Tex.1991). Though deriving that intent is normally done through a literal interpretation of the text, *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991), the court need not read the statute as expressly written if doing so would lead to unintended or absurd consequences. *Id.; Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991); *In Interest of Frost,* 815 S.W.2d 890, 892 (Tex.App.—Amarillo 1991, no writ). Another criteria obligates the court avoid interpretations fatally conflicting with other laws or the Constitution.

■ The construction of § 2.22–1(C) utilized below runs afoul of none of the foregoing rules. First, it comports with the plain wording of § 2.22–1(C). Second, it furthers the legislature's intent to make an otherwise indefinite limitations period finite. As one commentator noted, prior to the implementation of § 2.22–1(C), if no notice or opportunity to acquire preemptive shares was given to shareholders when the shares were issued, a shareholder could "presumably ... demand the right be honored long after the issuance." J. Lebowitz, 9 *Corporate Counsel Rev.* 1, 23–24 (Nov.1990).[2]

---

**2.** Historically, the relationship between corporation and shareholder was akin to one of trust.

*See Rex Refining Co. v. Morris,* 72 S.W.2d 687, 691 (Tex.Civ.App.—Dallas 1934, no writ) (stating

Third, in placing those shareholders who may have had accrued claims prior to August 1989 in the same category, for purposes of limitation, as those whose claims would accrue thereafter, the legislature chose not to discriminate. That was a permissible choice well within its prerogative. Moreover, the trial court's interpretations girds that choice.

■ Additionally, in acting as they did, neither the legislature nor the lower court implicitly revived lapsed claims. Nothing in the appellate record suggests, much less establishes as a matter of law, that Diversified overtly and unequivocally repudiated Payton's preemptive rights to the additional stock. Such was needed before Payton's claim even accrued. *See Langford v. Shamburger*, 417 S.W.2d 438, 445 (Tex.Civ.App.— Fort Worth 1967, writ ref'd n.r.e) (holding that there must be "a clear and unmistakable repudiation ... and such repudiation must be brought home to the [trust] beneficiary").

■ Similarly absent is any evidence illustrating that Payton knew or reasonably should have known of the sale to Disco. Payton expressly denies any such knowledge prior to 1990, that being the year he finally gained access to the corporate books he had long wanted to review. Moreover, Appellants mistakenly argue that the corporation's repeated effort to deny him those financial records sufficed to reasonably place him on notice of the preemptive right violation. To

kindle the duty to investigate and thereby place one on notice of a wrong, the acts referred to must have some reasonable nexus to the right ultimately encompassed in the lawsuit. *See Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (1945) (holding that "[w]e do not believe that knowledge of facts [indicating that Slay and Simon performed legal services for the trust's debtor] could reasonably have caused officers of the beneficiary, or the co-trustees, to suspect that the defendants had engaged or were engaging in the distinctly different conduct on account of which this suit was brought"). Here, Payton wanted Diversified's financial records to value his original 142 shares of stock, not to investigate the possibility of a § 2.22–1(A) infraction. Under these circumstances, we cannot conclude, as a matter of law, that by potentially violating, as early as the mid–1970's, Payton's right to see corporate records, Diversified put him on notice of a distinct preemptive rights violation in 1985. The nexus is too attenuated. No limitations applicable to the § 2.22–1(C) claim expired before August of 1989. Thus, the trial court's construction avoided potentially fatal conflict with the Texas Constitution. *See Tex. Const. Ann.* art. 1, § 16 (Vernon 1984) (prohibiting retroactive laws); *Cathey v. Weaver*, 111 Tex. 515, 242 S.W. 447, 451–52 (Tex.1922) (stating that a legislative enactment which revives an expired claim violates the state constitution); *Mills v. Habluetzel*,

that a corporation stands in the shoes of a trustee to *its* shareholders). This was so due to the contractual relation whereby the corporation acquired and held the stockholder's investment for a specific purpose and under express recognition of his rights accruing in the investment. *Yeaman v. Galveston City Co.*, 106 Tex. 389, 167 S.W. 710, 723–24 (1914). Since he could justly rely upon the corporation to avoid impairing his interests in his stock and its fruits, the shareholder was relieved of exercising the same amount of vigilance over his rights as that demanded of one not the beneficiary of a fiduciary relationship. *Id.* This easing of vigilance also provided him leeway in bringing suit often unavailable to those outside trustee affiliations. Consequently, claims against the corporation involving his interest in the stock and its fruits did not accrue until the corporation undertook some overt conduct denying or repudiating the interest. *Id.* (involving the payment of dividends); *see* 11 *T. Bjur & J. Solheim, Fletcher Cyclopedia of the Law of Private Corporations* Sec. 5141 (1995) (involving

preemptive rights); *Saigh v. Busch*, 403 S.W.2d 559, 566–67 (Mo.1966) (involving preemptive rights); *E.S. Woodworth & Co. v. Carroll*, 104 Minn. 65, 112 N.W. 1054, 1056 (1907) (involving preemptive rights); *Maynard v. Doe Run Lead Co.*, 305 Mo. 356, 265 S.W. 94, 98–99 (1924) (involving preemptive rights). Given that repudiation triggered accrual, it was conceivable that situations could arise, when dealing with dividends or preemptive rights, where the corporation did nothing to repudiate them and the shareholder did nothing to secure them. Should that circumstance have occurred, then limitations would never have begun. *See Yeaman v. Galveston City Co., supra* (expressly stating that limitations involving a claim for dividends did not accrue until the shareholder demanded payment and the corporation refused). Had that occurred, limitations would never have begun, and the corporation would have been perpetually liable. J. Lebowitz, 9 *Corporate Counsel Rev.* 1, 23–24 (Nov.1990).

456 U.S. 91, 95 n. 1, 102 S.Ct. 1549, 1552 n. 1, 71 L.Ed.2d 770, 775 n. 1 (1982) (stating the same in a case implicating Texas law); *Brantley v. Phoenix Ins. Co.*, 536 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd) (stating the same).

Given these circumstances, we find the trial court's interpretation and application of § 2.22–1(C) proper. Neither create an absurd, unduly harsh, or unlawful result. Neither impugn public policy. And, both comport with legislative intention. Accordingly, we affirm the summary judgment entered below.