Yvonne COOPER, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee.

No. 07–98–0023–CV.

Court of Appeals of Texas, Amarillo.

Jan. 12, 1999.

motion for new trial.

Carr, Fouts, Hunt& Wolfe, L.L.P., (Gary M. Bellair) (Donald M. Hunt), Lubbock, for appellant.

Bishop & Hummert, P.C. (E. Thomas Bishop) (Darryl J. Silvera), Dallas, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.[1]

BRIAN QUINN, Justice.

Before us pends the question of whether an aggravated injury comes within the definition of "injury" or "occupational disease" under the Texas Workers' Compensation Act. Yvonne Cooper (Cooper) said it did. St. Paul Fire and Marine Insurance Co. (St.Paul) said it did not. The trial court sided with St. Paul when it entered a final summary judgment denying Cooper workers' compensation benefits. Now, through four points of error, we are asked to determine whether the trial court was correct. Only two of the four points, however, need be addressed. The first concerns the lower court's jurisdiction to entertain the question and the second, the accuracy of the lower court's interpretation of the statute. For the reasons which follow, we reverse the judgment.

### Background

Cooper, an employee of NTS Communications (NTS), sustained a work-related injury

---

**1.** Justice Dodson did not participate in rendering this opinion and the accompanying judgment.

in July 1994 and underwent back surgery as a result thereof. She eventually returned to work in March 1995. Approximately 16 months then passed without incident. However, in July 1996 another episode occurred. While working, she fell over some boxes outside her supervisor's office and once again experienced back pain. NTS immediately notified its workers' compensation carrier, that being St. Paul, of the accident. Subsequently, Cooper submitted a claim requesting compensation benefits for the injuries arising from the July 1996 event.

The officer of the Texas Workers' Compensation Commission (Commission) who heard the matter concluded that Cooper had suffered a new injury and accordingly granted her relief. The dispute was appealed within the Commission by St. Paul. The appeals panel affirmed. Thereafter, St. Paul filed suit in the district court challenging the award and ultimately moved for summary judgment against Cooper. The only ground asserted in the motion involved whether the definition of "injury" found in the Workers' Compensation Act included the aggravation of a pre-existing injury. The trial court expressly held that it did not, granted summary judgment, and ordered that Cooper "recover nothing of and from St. Paul."

### Point of Error One

■ Under her first point, Cooper argues that the trial court lacked jurisdiction to enter the summary judgment. This was so because St. Paul allegedly failed to ask the appeals panel of the Commission to determine whether the aggravation of an injury fell outside the statutory definition of injury or occupational disease. And, in so failing to present the matter, it did not exhaust its administrative remedies as per section 410.251 of the Texas Labor Code. We overrule the point.

■ Statute does require, among other things, that one involved in a workers' compensation claim exhaust his administrative remedies before seeking redress in the courts. TEX. LAB.CODE ANN. § 410.251 (Vernon 1996). However, the need for exhausting administrative remedies has generally been held inapplicable to questions of law.

*Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex.1986); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 688 (Tex.App.—Tyler 1996, no writ). Additionally, matters of statutory interpretation, like that pending at bar, are nothing more than questions of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). Given this and the absence of anything in the Labor Code to suggest that exhaustion as contemplated in section 410.251 be treated differently, we hold that St. Paul was not obligated to first present the topic in question to the appeals panel. Thus, it is irrelevant whether the insurer first asked the panel to pass on the issue.

### Point of Error Two

Next, Cooper argued that the trial court erred in holding that the definition of "injury" does not encompass the aggravation of pre-existing injuries. In response, St. Paul acknowledged that the historical definition of "injury" under the Workers' Compensation Act did include the same. However, the insurer pointed out that, with the 1989 changes to the Act, the legislature allegedly wanted to revamp the entire workers' compensation scheme. This, coupled with the fact that the definition of "injury" adopted in 1989 said nothing of aggravation, indicated that the aggravation of a pre-existing injury was no longer compensable. With the latter proposition we disagree, and therefore sustain Cooper's second point.

■ In interpreting a statute, our quest is to define the intent of the legislature when enacting it. TEX. GOV'T CODE ANN. § 312.055 (Vernon 1998); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997); *Disco Machine of Liberal Co. v. Payton*, 900 S.W.2d 124, 126 (Tex.App.—Amarillo 1995, writ denied). Of paramount importance are the words actually employed in the edict. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d at 438 (noting that one looks at the actual language to define intent); *Disco Machine of Liberal Co. v. Payton*, 900 S.W.2d at 126 (noting that deriving intent is normally done through a literal interpretation of the words). This is especially so given the general absence of recorded legislative history

accompanying our state statutes. Thus, we turn to the words used by the legislature in communicating to us. Those words must be accorded their ordinary meaning, unless found to be terms of art or the like. Tex. Gov't Code Ann. § 312.002(a) & (b). That is, we are not free to assign to them the obtuse or absurd. *See Disco Machine of Liberal Co. v. Payton,* 900 S.W.2d at 126 (stating that a statute should not be interpreted in a manner leading to absurd consequences).

At the time Cooper allegedly suffered the injury underlying her present claim, the word "injury" was defined as:

> damage or harm to the physical structure of the body and those diseases or infections naturally resulting from the damage or harm. The term also includes occupational diseases.

Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, § 1.03(27), 1989 Tex. Gen. Laws 1, 3.[2] Furthermore, "occupational disease" meant:

> a disease arising out of and in the course of employment that causes damage or harm to the physical structure of the body ... includ[ing] other diseases or infections that naturally result from the work-related disease....

*Id.* at § 1.03(36).[3] Admittedly, in neither definition is mention made of the word "aggravation" or some similar term. Rather, the focus of both lies upon the phrase "damage or harm to the physical structure of the body." And, the literal and plain interpretation of those words is that if something occurs during the course of employment that damages or harms the physical structure of the employee's body, then the employee has suffered an "injury." So, to the extent that the aggravation of a prior injury caused damage or harm to the physical structure of the employee, it can reasonably be said that the resulting condition fell within the literal and plain meaning of "injury" as defined by the 71st Legislature.

Furthermore, before 1989, "injury" meant:

damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom. The term ... shall also be construed to mean and include 'Occupational Disease' ... [which] shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom ... includ[ing] damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment....

Act of May 27, 1971, 62nd Leg., R.S., ch. 834, § 1, 1971 Tex. Gen. Laws 2539–40. In comparing this definition with that enacted in 1989, one readily sees that both are basically the same. Aside from placing "injury" and "occupational disease" into different sections of the statute, both continued to pivot upon the existence of "damage or harm to the physical structure of the body." More importantly, judicial opinion construed the pre–1989 definition as including the theory of aggravation. *See, e.g., Texas Indem. Ins. Co. v. Staggs,* 134 Tex. 318, 134 S.W.2d 1026, 1029 (1940); *National Union Fire Ins. Co. v. Janes,* 687 S.W.2d 822, 824 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). We presume that the legislature knew this when it enacted the 1989 amendments to the compensation act. *In re Garcia,* 944 S.W.2d 725, 727 (Tex.App.—Amarillo 1997, no writ) (stating that "in a statutory construction sense, a statute is presumed to have been enacted by the legislature with complete knowledge of existing law and with reference to it"). Furthermore, in its retaining the substantially identical definition of "injury" in the 1989 amendments, we are provided further evidence not only of its approval of the definition but also of its desire to keep it. *Ector County v. Stringer,* 843 S.W.2d 477, 479 n. 4 (Tex.1992) (stating that one may presume the legislature approved of prior judicial in-

---

2. The current definition of "injury" under the Labor Code is found in Tex. Lab.Code Ann. § 401.011(26) (Vernon 1996), but is immaterial to the resolution of this appeal.

3. The current definition of "occupational disease" is located at Tex. Lab.Code. Ann. § 401.011(34) (Vernon 1996), but is immaterial to the resolution of this appeal.

terpretations of a statute when it re-enacts the statute without material change).

In sum, the literal definition of "injury," its historic interpretation by the court, and the re-enactment of the definition in 1989 without material change indicates but only one conclusion: the legislature intended the meaning of "injury" to include the aggravation of pre-existing conditions or injuries. And, because of this, the trial court erred in holding otherwise and granting St. Paul a summary judgment.

As previously mentioned, our disposition of point two relieves us from addressing the other points of error. Thus, we reverse the final summary judgment and remand the cause for further proceedings.