COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
STATE OFFICE OF RISK MANAGEMENT,   )                  No. 08-03-00436-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  327th District Court
)
HECTOR ESCALANTE,                                    )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 2002-2775)

O P I N I O N

            This is a workers’ compensation case arising out of a vehicle accident involving Hector
Escalante. After exhausting his administrative remedies in the Texas Workers’ Compensation
Commission (TWCC), Escalante appealed the adverse determination in district court. The jury
found in favor of Escalante on three of four issues, and the trial court entered judgment reversing in
part the determination of the TWCC. The State Office of Risk Management (SORM) appeals. 
Finding no error, we affirm.FACTUAL SUMMARY
            On August 9, 2000, Escalante was leaving a work-related awards ceremony on his way to a
job site when he was involved in a motor vehicle accident. He was struck by a truck as he drove out
of the parking lot. The truck dragged his car some forty feet into the street, spun him around, and
tore off the front of the car. Escalante refused medical attention at the scene and was later taken back
to work by a coworker. Admittedly, he had no bruises, scratches, or bleeding. 
            After the accident, Escalante complained of having unrelenting headaches and pain in his
neck, shoulder, ankle, and back. He also complained of blurred vision but he did not receive medical
attention until August 16 when he visited Dr. Michael Boone with whom he already had a follow-up
visit for a previous injury.


 Escalante notified the doctor of his new injury and reported his
symptoms. 
            Dr. Boone ordered x-rays and an MRI of the spine. The MRI results revealed that Escalante
had a herniated bulge from disks protruding at two levels in his neck and spine. Escalante was sent
for an evaluation of his neck in October 2000. He was referred to physical therapy due to a diagnosis
of lumbar radiculopathy and cervical neuropathy. Escalante also received electronic differential
stimulation and epidural injections for pain in his neck and lower back. Dr. Boone diagnosed him
as having cervical and lumbosacral root lesions and utilized the cervical epidurals to relieve pain. 
            Escalante returned to work in mid-December 2000. His medical restrictions included no
bending, stooping, crawling, or lifting more than twenty pounds. He returned to the same position
he held before the accident but was working the help desk. Escalante continued working until
February 22, 2001 when his employer sent him home because he could not perform the essential
physical job functions for his position. He was offered a demotion by the department for less pay. 
At this time, Escalante was still receiving therapy for his neck, back, and leg. He was ultimately
dismissed from his job on March 29, 2002. 
            By the time of trial, Escalante had deteriorating vision in his right eye, headaches, numbness
and weakness in his arms, and pain in his neck and back. He had never received treatment for a neck
condition before the auto accident nor had he suffered from blurred vision. He admitted previous
problems with his back, including a herniated disk in his lower back and sciatica pain in 1988-1989. 
He also had lateral laminectomy surgery in 1991, but had received no treatment for back problems
between this surgery and the lifting injury in May 1999. 
            Escalante filed a workers’ compensation claim. He began receiving benefits for the lifting
injury in March 2001. He was told that since he could not receive benefits on two claims at once,
he would be paid on his old injury until he reached maximum medical improvement, and then he
would be paid for his new injury. Escalante stopped receiving payments for his old injury but
payments for his new injury never began. 
            A contested case hearing was held on April 22, 2002. The hearing officer determined that
Escalante’s compensable injury did not include recovery for injury to the lumbar spine, ethnoid
sinusitis, cervical root lesions, neuroforaminal narrowing of C5-6 and C6-7, headaches, and/or
blurred vision. The appeals commission affirmed the decision, and Escalante sought review in
district court. The jury returned a verdict in favor of Escalante on injury to his lumbar spine and
formation of cervical root lesions. It also decided that Escalante’s injury in the car accident was the
producing cause of his disability from February 23, 2001 to April 22, 2002. LEGAL SUFFICIENCY
            In Point of Error No. One, SORM argues that Escalante failed to present legally sufficient
or necessary expert evidence on the extent of his injuries. In Point of Error No. Seven, it claims that
Escalante failed to produce legally sufficient evidence of disability.
Standard of Review
            In considering a no evidence point, we consider only the evidence and inferences tending to
support the jury’s findings and disregard all evidence and inferences to the contrary. See Weirich
v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992); Pool v. Ford Motor Co., 715 S.W.2d 629, 634-35
(Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Texas Tech University Health
Sciences Center v. Apodaca, 876 S.W.2d 402, 411-12 (Tex.App.--El Paso 1994, writ denied). If
more than a scintilla of evidence supports the questioned finding, the “no evidence” point fails. See
Tseo v. Midland Am. Bank, 893 S.W.2d 23, 25 (Tex.App.--El Paso 1994, writ denied); Hallmark v.
Hand, 885 S.W.2d 471, 474 (Tex.App.--El Paso 1994, writ denied). 
Challenged Findings
            The jury found that the compensable injury sustained by Escalante on August 9, 2000
(1) extended to include a compensable injury to his lumbar spine; (2) extended to include a
compensable injury in the form of cervical root lesions; (3) did not extend to include a compensable
injury in the form of blurred vision; (4) was a producing cause of disability; and (5) the disability
existed from February 23, 2001 to April 22, 2002. SORM challenges the jury’s findings of injury
to the lumbar spine and the cervical root lesions as well as the disability findings.
Necessity of Expert Testimony?
            The Workers’ Compensation Act defines a compensable injury as “damage or harm to the
physical structure of the body.” Tex. Lab.Code Ann. § 401.011(26)(Vernon Supp. 2004-05). As
a matter of law, pain alone cannot be considered damage to the body. Saldana v. Houston General
Ins. Co., 610 S.W.2d 807, 811 (Tex.Civ.App.--Houston [1st Dist.] 1980, writ ref’d n.r.e.). However,
the aggravation of a pre-existing condition is a compensable injury for purposes of the Act. See
Peterson v. Continental Cas. Co., 997 S.W.2d 893, 895 (Tex.App.--Houston [1st Dist.] 1999, no
pet.); Cooper v. St. Paul Fire & Marine Ins. Co., 985 S.W.2d 614, 616-18 (Tex.App.--Amarillo
1999, no pet.).
            SORM complains that Escalante’s injuries resulted in no visible changes to his body such
that Escalante had to present expert medical evidence on his injuries since they were not those that
a layman could reasonably understand. It directs us to four cases in support of this proposition. 
First, it draws upon Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 373 (1948) for
its holding that where a claimant suffered injury to the joints of his knee, shoulder, and spine, the
severity and true character were to be revealed only by the most minute, technical, and scientific
examinations by medical experts. Id. at 373. Hawkins was a workers’ compensation suit in which
the trial court instructed a verdict for the insurance company on the sole ground that the claimant had
failed to raise a fact issue as to good cause for not filing his claim within statutory guidelines. Id.
at 371. In other words, the court was examining whether the claimant had used due diligence in filing
his claim. Id. at 372. It does not stand for the proposition that Escalante had to offer medical
evidence to show the extent of his injuries.
            Next, SORM relies upon Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996) for its holding
that given the increasingly specialized and technical nature of medicine, there is no validity to the
notion that every licensed medical doctor should automatically be qualified to testify as an expert
on every medical question. But Broders involved the question of whether a witness was qualified
to testify as an expert on a particular issue. A doctor is not qualified as an expert merely because he
is a medical doctor. Id. at 152. Dr. Boone, as Escalante’s treating orthpaedic surgeon, does not fall
within the Broders analysis.
            Third, SORM contends that Escalante relied upon conclusory medical reports which were
not business records and did not prove causation. It cites Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 500 (Tex. 1995) for the premise that in order to constitute evidence of causation, an
expert opinion must rest on reasonable medical probability. There, the court concluded that when
an expert’s opinion is based on assumed facts that vary materially from the actual, undisputed facts,
the opinion is without probative value and cannot support a verdict. Id. at 499-500; see Schaefer v.
Texas Employers’ Ins. Ass’n, 612 S.W.2d 199, 202-05 (Tex. 1980)(reviewing substance of medical
expert’s testimony and holding that this testimony constituted no evidence of causation, as it was
based on assumptions, possibility, speculation, and surmise). Here, SORM has never contended that
Dr. Boone’s opinion was based on facts that vary materially from those established by the evidence. 
Consequently, Burroughs is distinguishable.
            Finally, SORM references Barraza v. Eureka Co., 25 S.W.3d 225, 230 (Tex.App.--El Paso
2000, pet. denied). There, the plaintiff sued her employer claiming that she suffered injury to her
hands and wrists as a result of repetitive movements during the continual use of manual machines. 
Id. at 227. The expert, an industrial engineer, summarized the testimony of several employees as to
the injuries they had received and concluded that the company’s continual use of the manual
machines constituted negligence which was the proximate cause of the plaintiff’s injury. Id. The
court determined that as an engineer, the expert was not qualified to render a medical opinion. Here,
Dr. Boone’s opinions were made in his capacity as a treating medical doctor and from his own
observations and examinations of Escalante. 
            We conclude that the evidence is legally sufficient to sustain the jury’s findings on
compensable injuries sustained by Escalante to his lumbar spine and in the form of cervical root
lesions. It is not necessary to present expert medical testimony in order to establish a compensable
new injury. Peterson, 997 S.W.2d at 896 n.3. Lay opinion testimony may be sufficient to raise a
fact issue. Id.; see National Farmers Union Property and Cas. Co. v. Degollado, 844 S.W.2d 892,
897 (Tex.App.--Austin 1992, writ denied)(stating competent lay opinion testimony may be sufficient
to establish the extent of incapacity or disability). Escalante offered his medical records and his own
testimony. He was not required to present additional expert medical testimony. See Peterson, 997
S.W.2d at 896 n.3. The jury could have reasonably determined that Escalante suffered an
aggravation of his prior back injury as well as a new injury to his neck. Point of Error No. One is
overruled.
“Disability” 
            “Disability” is defined as “the inability because of a compensable injury to obtain and retain
employment at wages equivalent to the preinjury wage.” Tex.Lab.Code Ann. § 401.011(16). Proof
of the duration and extent of a disability resulting from an injury is, like the assessment of damages
in a personal injury action, at best an estimate which must be determined by a jury from all the
pertinent facts before it. Reina v. General Acc. Fire and Life Assur. Corp., Ltd., 611 S.W.2d 415,
416 (Tex. 1981), citing Texas Employers’ Insurance Ass’n v. Washington, 437 S.W.2d 340
(Tex.Civ.App.--Dallas 1969, writ ref’d n.r.e.); Transport Insurance Co. v. Garcia, 580 S.W.2d 96
(Tex.Civ.App.--Houston [1st Dist.] 1979, writ ref’d n.r.e.). A jury may reasonably infer permanent
disability from circumstantial evidence produced by lay witnesses. Id. at 417. This is true even if
the evidence is contradicted by the testimony of medical experts. Id., citing Travelers Insurance Co.
v. Wade, 373 S.W.2d 881 (Tex.Civ.App.--Dallas 1963, writ ref’d n.r.e.). The issue of disability may
be established by the worker alone. Id., citing Insurance Company of Texas v. Anderson, 272
S.W.2d 772 (Tex.Civ.App.--Waco 1954, writ ref’d n.r.e.).
            In viewing the evidence through the proper prism, we conclude the jury could have
reasonably determined that Escalante’s injuries from the auto accident resulted in his disability from
February 23, 2001 to April 22, 2002. The duration and extent of a disability is best left to the
determination of the jury. See Reina, 611 S.W.2d at 416. Further, the disability can be established
solely by testimony from the worker. See id. at 417. We overrule Point of Error No. Seven.
EVIDENTIARY ERROR
            In five points of error, SORM complains of evidentiary error. The admission and exclusion
of evidence is committed to the trial court’s sound discretion. Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any
guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). 
Admission of Evidence Not Offered in TWCC Proceedings
            In Point of Error No. Two, SORM complains that the trial court failed to determine whether
good cause existed to admit evidence that was not offered in proceedings conducted before the
TWCC. The Labor Code provides:
A party who fails to disclose information known to the party or documents that are
in the party’s possession, custody, or control at the time disclosure is required by
Sections 410.158-410.160 may not introduce the evidence at any subsequent
proceeding before the commission or in court on the claim unless good cause is
shown for not having disclosed the information or documents under those sections.


Tex.Lab.Code Ann. § 410.161 (Vernon 1996). When an appeals panel decision is appealed to the
trial court, the trial court reviews it under a modified de novo standard. Peterson, 997 S.W.2d at
895, citing Texas Workers’ Compensation Comm’n v. Garcia, 893 S.W.2d 504, 530 (Tex. 1995).
The proceeding is reviewed de novo since new evidence (other than what the hearing officer was
presented with) is admissible at trial. Id., citing Garcia, 893 S.W.2d at 530. 
            SORM takes issue with the following documents which were not introduced at the contested
case hearing but which were admitted during the trial below: (1) the February 28, 2002 MRI and
(2) the late 2002 and 2003 assertions by Dr. Boone. SORM appears to argue that any and all
evidence not offered at the hearing must be excluded at a subsequent trial. Section 410.161 does not
provide that a party who fails to disclose information at the hearing may not introduce the evidence
at a subsequent proceeding; the statute requires a party to disclose information known to the party
or documents in the party’s possession, custody, or control at the time the disclosure was required. 
Tex.Lab.Code Ann. § 410.161. Any late 2002 or 2003 reports or letters by Dr. Boone would not
have been known to Escalante at the time of the hearing nor in his possession, custody, or control
at that time. See Tex.Lab.Code Ann. § 410.161. 
            Escalante admitted that he did not introduce the MRI report at the contested hearing and that
the report may have been in existence at the time of the hearing. But he explained that he did not
receive the report until a day or two after the hearing. Not only did he not have it in his possession
at the time of the hearing, he was not even aware of it until after the hearing. The trial court could
well have found that the reports were admissible under Section 410.161. Finding no abuse of
discretion, we overrule Point of Error No. Two.
Exclusion of Dr. Pollet’s Report
            In Point of Error No. Three, SORM complains that the medical examination performed by
its chosen doctor was excluded although it was authenticated and admitted during the administrative
proceedings. In Point of Error No. Four, it argues that Escalante opened the door to its admission
by offering exhibits which referenced Dr. Pollet’s report and by eliciting testimony from the case
adjuster who was questioned about the report.
            All facts and evidence contained within the administrative record are admissible to the extent
allowed under the Rules of Evidence. Tex.Lab.Code Ann. § 410.306(b). Dr. Pollet’s report was
included in the Commission’s record. However, our procedural rules provide:
(a) Exclusion of Evidence and Exceptions. A party who fails to make, amend, or
supplement a discovery response in a timely manner may not introduce in evidence
the material or information that was not timely disclosed, or offer the testimony of
a witness (other than a named party) who was not timely identified, unless the court
finds that: 
 
(1) there was good cause for the failure to timely make, amend, or
supplement the discovery response; or 
 
(2) the failure to timely make, amend, or supplement the discovery response
will not unfairly surprise or unfairly prejudice the other parties. 
 
(b) Burden of Establishing Exception. The burden of establishing good cause or the
lack of unfair surprise or unfair prejudice is on the party seeking to introduce the
evidence or call the witness. A finding of good cause or of the lack of unfair surprise
or unfair prejudice must be supported by the record.

Tex.R.Civ.P. 193.6(a), (b). The trial court has discretion to determine whether or not a party calling
an unidentified witness has met its burden of showing good cause. Morris v. Short, 902 S.W.2d 566,
570 (Tex.App.--Houston [1st Dist.] 1995, writ denied); see also American Home Assurance Co. v.
Lara, 967 S.W.2d 907 (Tex.App.--El Paso 1998, pet. denied)(no attempt to show good cause). In
fact, the Texas Supreme Court has held that an unidentified witness could not testify, even though
his deposition had been taken. See Sharp v. Broadway Nat. Bank, 784 S.W.2d 669, 671 (Tex. 1990). 
Further, Rule 194.2(e) requires disclosure of “the name, address, and telephone number of persons
having knowledge of relevant facts, and a brief statement of each identified person’s connection with
the case.” Tex.R.Civ.P. 194.2(e). 
            The trial court excluded the report since SORM failed to designate Dr. Pollet as a person with
relevant knowledge or as an expert. The trial court found that the failure would unfairly surprise or
prejudice Escalante since he was not given an opportunity to cross-examine or depose Dr. Pollet, and
SORM offered no explanation for not designating Pollet as a person with relevant knowledge. See
Tex.R.Civ.P. 193.3(a). Point of Error No. Three is overruled.
            SORM next argues that Escalante opened the door to the admission of the report. On appeal,
it contends that the ruling unduly restricted cross-examination. Cross-examination is a safeguard
essential to a fair trial and a cornerstone in the quest for truth; longstanding principles of our
jurisprudence recognize the right and necessity of full and complete cross-examination. Davidson
v. Great National Life Insurance Co., 737 S.W.2d 312, 313 (Tex. 1987). The right to cross examine
a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party
from going fully into all matters connected with the examination in chief. Id., citing Texas
Employers Insurance Ass’n v. Garza, 308 S.W.2d 521, 527 (Tex.Civ.App.--Amarillo 1957, writ
ref’d n.r.e.). Due process requires an opportunity to confront and cross-examine adverse witnesses. 
Id., citing Goldberg v. Kelly, 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970);
Baltierra v. State, 586 S.W.2d 553, 556 (Tex.Crim.App. 1979). It is proper to allow a party to be
fully cross-examined as to previous injuries, claims and actions to show that his present physical
condition is not the result of the injury presently sued for, but was caused in whole or in part by an
earlier or subsequent injury or a pre-existing condition. Bonham v. Baldeschwiler, 533 S.W.2d 144,
148 (Tex.Civ.App.--Corpus Christi 1976, writ ref’d n.r.e.), citing Robertson v. Southwestern Bell
Telephone Co., 403 S.W.2d 459, 468 (Tex.Civ.App.--Tyler 1966, no writ). 
             SORM maintains that two of Escalante’s exhibits referred to independent medical exams
by Dr. Pollet. We have thoroughly reviewed the voluminous medical reports and have found Dr.
Pollet’s examination mentioned four times:
●          December 27, 2002--Notes by Dr. Boone reflect “Dr. Richards and I both reported 16% and
Dr. Pollet’s [sic] reports 10%, so I do not know how this is going to be resolved.” 
 
●          August 21, 2001--Notes by Dr. Boone reflect “Dr. Pollet saw the patient for an IME, was
given 10 percent low back impairment in relation to the 1999 injury.”



 
●          June 20, 2001--Notes by Dr. Boone reflect “[Escalante] has an independent medical exam
with Dr. Pollet sometime soon.”
Escalante also introduced portions of the deposition testimony of Joseph De Palma. De Palma
worked for SORM and served as an adjuster for Escalante’s claim. After Escalante’s tender, SORM
offered other portions of the deposition, including the following exchange: 
QUESTION:There was a subsequent attempt by your office to better understand
the nature of Mr. Escalante’s accident in April of 2002


 when you
retained a physician to perform an independent medical exam. Do
you recall that?
 
ANSWER:No, I would not recall anything that was not within that division.
QUESTION:Okay. In the course of your work as an adjuster have you retained
physicians to perform independent medical exams on employees?
 
ANSWER:Yes, I have.
SORM explained that the only independent medical exam was performed by Dr. Pollet and argued
that Escalante had “opened the door” its admission. The trial court disagreed, as do we. 
            The brief references to Dr. Pollet made by Dr. Boone in passim do not rise to the level of
opening the door for the admission of Pollet’s report. The comments do no more than mention his
eventual examination and reveal a disagreement of the impairment rating for the lifting injury. Dr.
Boone does not analyze, challenge, discredit, or otherwise opine concerning the report or the method
of examination. And SORM had a full opportunity to cross-examine Escalante. Bonham, 533
S.W.2d at 148. He was thoroughly questioned regarding his previous work-related injury and other
prior ailments including scoliosis, intraocular pressure, sinus problems, and chronic back pain. 
Finding no abuse of discretion, we overrule Point of Error No. Four.
Admission of Business Records
            In Point of Error No. Five, SORM contends that the trial court erred in admitting reports of
Dr. Boone which were not prepared in the regular course of business and did not meet the business
records hearsay exception. The business records hearsay exception provides: 
A memorandum, report, record, or data compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or near the time by, or from information
transmitted by, a person with knowledge, if kept in the course of a regularly
conducted business activity, and if it was the regular practice of that business activity
to make the memorandum, report, record, or data compilation, all as shown by the
testimony of the custodian or other qualified witness, or by affidavit that complies
with Rule 902(10), unless the source of information or the method or circumstances
of preparation indicate lack of trustworthiness. ‘Business’ as used in this paragraph
includes any and every kind of regular organized activity whether conducted for
profit or not.

Tex.R.Evid. 803(6). 
            SORM argues that the documents were developed months and years after the incident and
contained no explanation of conclusory statements nor how they met the business record
requirement. It also asserts that the reports contain no explanation of the doctor’s training,
experience, or ability to come to such conclusions, no causal connections, and merely recite the
“magic words.” 
            In support of this argument, SORM directs us to Hooper v. Torres, 790 S.W.2d 757, 759-760
(Tex.App.--El Paso 1990, writ denied). There, this court considered whether the trial court erred in
excluding a major portion of a doctor’s report. Id. at 759. It examined whether the report was a
business record and thus an exception to the hearsay rule. Id. at 760. An employee of El Paso
Orthopedic Surgery Group had testified that the letter in question contained the signature of the
doctor, that he was licensed to practice medicine in Texas and was board certified as an orthopedic
specialist, that the letter was the type of record made in the ordinary course of business, and that
someone with knowledge of the events recorded made a record at or about the time the events
occurred. Id. The court found guidance in Texas Employer’s Insurance Association v. Sauceda, 636
S.W.2d 494 (Tex.App.--San Antonio 1982, no writ). In Sauceda, the insurance carrier contended
that the trial court erred in excluding a doctor’s letter offered to prove that the claimant’s loss of use
of his ankle was less than total. Id. at 496. The claimant argued that the record had not been
properly authenticated as a business record. Id. at 497. The court opined that its examination of the
letter led it to believe that the letter was prepared in response to a request by a representative of the
insurance carrier and that in the absence of the doctor’s remaining records, the court was unable to
ascertain the purpose for the letter. Id. at 499. If the letter were written solely in response to a
request by the carrier, it did not qualify as a routine entry in the claimant’s medical history. Id. The
court concluded that the letter was not evidence of a routine entry made in the regular course of the
doctor’s business since on its face, the letter was an attempt to convey an opinion elicited by an
outside interested source. Id. Thus, Hooper held that most of the report was a summary of notes
made by other doctors and that the trial court did not err in excluding a portion of the report which
was not based upon entries made by the doctor or employees of his surgery group. Hooper, 790
S.W.2d 760. SORM does not contend that any of the objectionable documents contained entries
which were not made by Dr. Boone. Hooper, 790 S.W.2d at 760. Nor does it suggest that the
reports were written solely in response to a request by the insurance carrier or that the evaluation
would not have been done otherwise. See Sauceda, 636 S.W.2d at 499. Point of Error No. Five is
overruled. Decision from the Contested Case Hearing
            In Point of Error No. Six, SORM complains that the decision of the administrative judge
arising from the contested hearing should have been admitted as a public record. The Rules of
Evidence provide: 
Records, reports, statements, or data compilations, in any form, of public offices or
agencies setting forth: 
 
(A) the activities of the office or agency; 
 
(B) matters observed pursuant to duty imposed by law as to which matters there was
a duty to report, excluding in criminal cases matters observed by police officers and
other law enforcement personnel; or 
 
(C) in civil cases as to any party and in criminal cases as against the state, factual
findings resulting from an investigation made pursuant to authority granted by law; 
 
unless the sources of information or other circumstances indicate lack of
trustworthiness.

Tex.R.Evid. 803(8). “Hearsay included within hearsay is not excluded under the hearsay rule if each
part of the combined statements conforms with an exception to the hearsay rule provided in these
rules.” Tex.R.Evid. 805. 
            Two provisions of the workers’ compensation statute govern the admissibility of the
Commission’s decisions in jury trials. The first requires a trial court to “inform” the jury of the
appeals panel decision in its charge to the jury. See Tex.Lab.Code Ann. § 410.304(a). The second
allows admission of “[a]ll facts and evidence” contained in the Commission’s record “to the extent
allowed under the Texas Rules of Civil Evidence.” Tex. Lab.Code Ann. § 410.306(b). The Texas
Supreme Court has interpreted this provision to mean the Commission’s record is admissible in a
jury trial to the extent allowed by the rules of evidence. See Garcia, 893 S.W.2d at 515 n.11; accord
ESIS, Inc. v. Johnson, 908 S.W.2d 554, 560 (Tex.App.--Fort Worth 1995, writ denied). The record
includes the written opinion of the appeals panel. See ESIS, 908 S.W.2d at 560.
            However, evidence heard by the agency is not per se admissible at trial in the district court. 
Mary Lee Foundation v. Texas Employment Com’n, 817 S.W.2d 725, 727 (Tex.App.--Texarkana
1991, writ denied). Whether the evidence is admissible depends upon its own merits under the
general rules of evidence. Id.; see Halsell v. Texas Water Commission, 380 S.W.2d 1
(Tex.Civ.App.--Austin 1964, writ ref’d n.r.e.); Texas Liquor Control Board v. Taylor, 338 S.W.2d
321 (Tex.Civ.App.--Waco 1960, no writ); Kavanagh v. Holcombe, 312 S.W.2d 399 (Tex.Civ.App.--
Houston 1958, writ ref’d n.r.e.); Miller v. Tarry, 191 S.W.2d 501 (Tex.Civ.App.--Austin 1945, writ
ref’d n.r.e.). The public records exception to the hearsay rule does not mean that ex parte statements,
hearsay, conclusions, and opinions contained within such records are automatically admissible. 
Mary Lee Foundation, 817 S.W.2d at 728, citing Wright v. Lewis, 777 S.W.2d 520 (Tex.App.--
Corpus Christi 1989, writ denied).
            By way of pretrial motion, Escalante sought to in limine the decision, opinion, or finding of
the TWCC’s contested case hearing officer or benefit review officer. At a pretrial conference,
counsel for Escalante argued that the decision of the appeals panel was admissible but that no
authority suggested that documents contained within the Commission file were automatically
admissible. He specifically objected to the contested case hearing officer’s decision on the basis of
hearsay. The court granted the requested relief. At trial, SORM made an offer of proof--Defendant’s
Exhibit 18--of a certified copy of the entire administrative hearing file “to show -- this just goes to
the objection on the documents that have been offered and admitted subsequent to the hearing.” The
exhibit was not offered into evidence, nor was the trial court asked to rule upon its admissibility. 
And while the decision of the hearing officer at the contested case hearing is included within the
hundreds of pages which comprise Exhibit 18, the seven page decision was not offered separately. 
On appeal, SORM limits its complaint to the exclusion of this singular document. 
            The granting or overruling of a motion in limine is not in and of itself error. Rodarte v. Cox,
828 S.W.2d 65 (Tex.App.--Tyler 1991, writ denied); Bifano v. Young, 665 S.W.2d 536
(Tex.Civ.App.--Corpus Christi 1983, writ ref’d n.r.e.). It simply requires a litigant to approach the
bench before pursuing a line of questioning or referencing particular documents. A judgment will
not be reversed unless the evidence is in fact offered. Acord v. General Motors Corp., 669 S.W.2d
111 (Tex. 1984); Hartford Accident and Indemnity, Co. v. McCardell, 369 S.W.2d 331 (Tex. 1963). 
Moreover, where evidence is tendered, only a portion of which is admissible, and an appropriate and
specific objection is sustained, it is the burden of the party offering it to separate the admissible from
inadmissible testimony. Hurtado v. Texas Employers’ Insurance Association, 574 S.W.2d 536 (Tex.
1978). If the burden of segregation is not met by the tendering party, the trial court does not err in 
excluding it in its entirety, and a point of error challenging the exclusion will not be preserved. 
Perry v. Texas Municipal Power Agency, 667 S.W. 2d 259 (Tex.App.--Houston [1st Dist.] 1984, writ
ref'd n.r.e.). We overrule Point of Error No. Six. Having overruled all issues for review, we affirm
the judgment of the trial court.


February 17, 2005                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
(Larsen, J., not participating)