MARY'S OPINION HEADING 







                                                                                                                NO. 12-99-00355-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
GLENDA MACKEY,                                          §                 APPEAL FROM THE 241ST
APPELLANT


 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

U.P. ENTERPRISES, INC., d/b/a TACO
BELL, RON SMITH, GREG JOHNSON,
RICHARD UPSHAW, INDIVIDUALLY
AND JDS RESTAURANTS, INC.
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            This is a sexual harassment case. Appellant Glenda Mackey alleged that two Taco Bell store
managers subjected her to sexual harassment and sexual discrimination and that she ultimately was
wrongfully discharged. Mackey asserted several causes of action including assault, intentional
infliction of emotional distress, sexual harassment, wrongful discharge, and intent to delay, hinder,
or defraud. The trial court submitted the issues of assault, intentional or reckless infliction of
emotional distress, and sexual harassment to the jury who returned a verdict for Appellees on all
issues. Mackey presents five issues on appeal. We affirm.
 
Background
            Appellee Ron Smith, store manager for Taco Bell franchisee U.P. Enterprises, Inc. (“U.P.”),
employed Mackey to work at the Gentry Parkway Taco Bell in Tyler, Texas in mid-November of
1990. Mackey testified that when she rebuffed Smith’s repeated demands for sexual relations, her
working hours were systematically reduced. In March of 1991, she was transferred to the Troup
Highway Taco Bell where Greg Johnson was manager. According to Mackey, Johnson made sexual
innuendos, insulted her in vulgar and sexually explicit terms, touched her about the breasts and
buttocks, and demanded she have sexual intercourse with him. She testified that one day when she
had no car, Johnson offered to take her to work. She said that when he arrived at her home, he told
her he would not take her to work unless she had sexual relations with him and that he would fire
her if she were late. She consented to have sexual relations with him only because she knew that
there was no time to arrange for other transportation that could get her to work on time. If she lost
her job, she feared she would not be able to take care of her children.
            At the end of August, she told two female managers about Smith’s and Johnson’s constant
sexual demands. Mackey told the jury that at the next store meeting following her conversations
with the female managers, Johnson informed the assembled employees that whatever happened at
the store was to remain there – “or else.” Mackey testified that she was fired the next day.
            Appellees’ evidence presented an entirely different story from that of Mackey. According
to Appellees, Mackey received several written reprimands for failure to report to work as scheduled
and for rudeness to a customer during her employment with U.P. She was warned that such
violations, if repeated, would result in disciplinary action, including termination of her employment. 
Approximately two or three weeks prior to Mackey’s termination, Richard Upshaw, chief operating
officer for U.P., received two telephone calls from customers who complained of being mistreated
by Mackey. On September 21, 1991, Upshaw drove to the Troup Highway Taco Bell where Mackey
was on duty at the drive-in window. As Upshaw got out of his vehicle, he overheard Mackey
arguing with a customer through the drive-through speaker. Upshaw immediately entered the store
and instructed Daryl Friend, the manager in charge at that time, to remove whoever was working at
the drive-through window and to terminate her employment immediately. Friend discharged Mackey
for repeated rudeness to customers.
            Only thereafter did Mackey inform Upshaw that Greg Johnson, a U.P. supervisor, had been
“messing with her,” implying sexual misconduct. During Mackey’s employment with U.P., the
company had a policy requiring that complaints of sexual harassment be made as soon as possible
and communicated to front-office management. According to U.P., Mackey never complained to
any U.P. official or supervisor while she was employed.
            Upshaw informed Mackey that he would investigate her charges and take appropriate action. 
Mackey filed a sexual harassment complaint with the Texas Commission on Human Rights. When
U.P. received a request for information and documentation from the Commission, U.P. employed
F.R. Houck of Industrial Relations Assistance, Inc. to conduct an investigation and prepare an
answer for the Commission. Houck interviewed present and former employees of U.P., including
those listed by Mackey as supporting witnesses in her complaint to the Commission. Houck’s
investigation found no evidence that Mackey had been sexually harassed.
 
Is the Employment At Will Doctrine an Affirmative Defense?
            In her first issue, Mackey complains the trial court erred in submitting a jury instruction
concerning the employment-at-will doctrine. In its charge, the court included the following
instruction:
 
Under Texas law, both the employer and the employee may terminate an employment relationship at-will at any time unless they have agreed otherwise. Under Texas law, an employment relationship is
generally terminable at the will of either party. The term “at-will” means that employment may legally
be terminated for any reason or for no reason just by giving notice to the other party.


            Mackey insists the instruction was improper for three reasons. First, she contends that the
employment-at-will doctrine is an affirmative defense, which must be affirmatively pleaded. Since
U.P. did not plead the employment-at-will doctrine, Mackey maintains the charge was improper. 
Second, Mackey contends that no affirmative defense is available to a defendant whose supervisor’s
harassment culminates in a “tangible employment action such as discharge, demotion or undesirable
reassignment.” Third, she argues that the instruction was misleading and therefore did not aid the
jury’s deliberations.
            A trial court is required to “submit such instructions and definitions as shall be proper to
enable the jury to render a verdict.” Tex. R. Civ. P. 277. An explanatory instruction’s only function
in the charge is to aid and assist the jury in answering the questions submitted. Union Oil Co. of
Cal. v. Richard, 536 S.W.2d 955, 957 (Tex. Civ. App.–Beaumont 1975, writ ref’d n.r.e.). The trial
court should refuse to submit unnecessary instructions even if they are legally correct statements, and
the submission of unnecessary instructions may require reversal if the instructions are prejudicial. 
European Crossroads’ Shopping Ctr., Ltd. v. Criswell, 910 S.W.2d 45, 54 (Tex. App.–Dallas 1995,
writ denied). The trial court, however, has wide discretion in deciding when it is appropriate to
submit explanatory instructions and definitions to the jury. See Plainsman Trading Co. v. Crews,
898 S.W.2d 786, 791 (Tex. 1995). Its decisions in this regard are reviewable under the abuse of
discretion standard. See Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2002). To
demonstrate reversible error, an appellant must show not only that an instruction was improper, but
also that the error was reasonably calculated to cause, and probably did cause, the rendition of an
improper judgment. Tex. R. App. P. 44.1(a); McCraw v. Maris, 828 S.W.2d 756, 757 (Tex. 1992). 
To determine whether an alleged error in the submission of an instruction is reversible, we must
consider the pleadings, the evidence, and the charge. Island Recreational Dev. Corp. v. Republic
of Texas Sav. Ass’n, 710 S.W.2d 551, 555 (Tex. 1986).
            Mackey correctly insists that affirmative defenses must be pleaded. Tex. R. Civ. P. 94. The
listing of affirmative defenses in Rule 94 is not exclusive. Phillips v. Phillips, 820 S.W.2d 785, 789
(Tex. 1991). Our research, however, has disclosed no case defining the employment-at-will doctrine
as an affirmative defense. Nor is it, in our view, a “matter constituting an avoidance or affirmative
defense.” See Tex. R. Civ. P. 94. The case cited by Mackey, Vaughn v. Sturm-Hughes, 937
S.W.2d 106 (Tex. App.–Fort Worth 1996, writ denied), states that a defendant moving for summary
judgment on the basis of an affirmative defense must conclusively prove all essential elements of
the defense. Id. at 108. In Vaughn, the plaintiff conceded that the defendant had conclusively
established all the elements of the affirmative defense of limitations. He contended, however, that
the defendant was estopped from asserting limitations. Vaughn contains no mention of the
employment-at-will doctrine.
            The evidence reflects that Mackey was an employee “at will,” and under Texas law it is
presumed she remained an at-will employee throughout her employment. Durckel v. St. Joseph
Hospital, 78 S.W.3d 576, 581 (Tex. App.–Houston [14th Dist.] 2002, no pet.). It is the burden of
the discharged employee to show otherwise. Id. In Texas, employment is presumed to be at will,
thereby terminable “at any time by either party, with or without cause, absent an express agreement
to the contrary.” Fed. Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993).
            Mackey’s first two arguments urging error in the charge are based on her unsupported
assumption that employment at will is an affirmative defense that must be pleaded, and even if
pleaded, is unavailable to a defendant whose supervisor’s harassment culminates in a tangible
employment action, such as discharge, demotion, or undesirable assignment. Since we conclude that
the employment-at-will doctrine is not an affirmative defense, Mackey’s first two arguments alleging
charge error are wholly unfounded. Moreover, we conclude that the challenged instruction did not
mislead or confuse the jury. The trial court did not err in including the “employment at will”
instruction in the charge. Mackey’s first issue is overruled.
 
Bifurcated Trial
            In her second issue, Mackey maintains the trial court erred in granting Appellees’ motion for
bifurcated trial filed after the conclusion of the voir dire examination. Mackey argues that by
separating the punitive damages aspect of the trial from the presentation of her case in chief, the trial
court prevented her introduction of evidence of other acts of sexual harassment committed by U.P.’s
supervisors. Mackey contends that the trial court’s ruling prevented the full presentation of her case.
            The Texas Civil Practice and Remedies Code provides that, on a defendant’s motion, the
court shall provide for a bifurcated trial. Tex. Civ. Prac. & Rem. Code Ann. § 41.009(a) (Vernon
1997). “A motion under this section shall be made prior to the voir dire examination of the jury. . . .” 
Id. Since the statute is couched in mandatory language, Mackey insists the trial court reversibly
erred in granting Appellees’ untimely motion for a bifurcated trial. She contends she was irreparably
harmed because the improper bifurcation resulted in the exclusion of evidence showing a pattern of
sexual harassment and an inconsistently-applied policy to prevent and correct sexually harassing
behavior.
            The separation of the jury’s determination of the amount of punitive damages from its
determination of other issues was first mandated by the supreme court in Transportation Insurance
Company v. Moriel, 879 S.W.2d 10 (Tex. 1994), a development foreshadowed by Justice
Gonzalez’s concurring opinion in Wal-Mart Stores v. Alexander, 868 S.W.2d 322 (Tex. 1993). The
majority believed that evidence of the defendant’s net worth, while relevant to the amount of
punitive damages, was wholly irrelevant to the other disputed issues in a tort case, and that by
emphasizing the relative net worth of the defendant, had a potential for prejudicing the jury’s
determination of the other issues. Moriel, 879 S.W.2d at 30. In a bifurcated proceeding, the jury
first hears evidence of liability for actual damages, the amount of actual damages, and liability for
punitive damages (e.g., gross negligence, aggravated conduct, etc.), and returns findings on these
issues. If the jury finds the defendant liable for punitive damages, the same jury is then presented
evidence relevant only to the amount of punitive damages (e.g., net worth) and determines the
amount of punitive damages considering all of the evidence admitted at both stages of the trial. Id.
            Appellees do not address the mandatory language of the 1995 statute, but contend that the
decision to bifurcate the trial was within the trial judge’s discretion. As support for their argument,
Appellees rely on Johnson v. State Farm Mutual Auto Insurance, 762 S.W.2d 267 (Tex. App.–San
Antonio 1988, writ denied). Moreover, they argue that, throughout the trial, the trial court rejected
as substantially more prejudicial than probative repeated proffers of the same evidence Mackey
claims was excluded by the trial court’s bifurcation ruling. Appellees maintain the trial court
correctly exercised its discretion in ordering bifurcation and in excluding the evidence under Rule
403 as substantially more prejudicial than probative.
            In Johnson, an uninsured motorist claim, the trial court granted separate trials, separating
the issue of (1) whether Johnson had released her uninsured motorist claim from (2) her claim
against State Farm for breach of good faith and fair dealing. Johnson raised no objection at trial, and
the appellate court held that Johnson had not preserved error. The San Antonio court, however,
added that under Texas Rule of Civil Procedure 174(b), the standard of review on appeal was abuse
of discretion and that there had been no abuse of discretion. Id. at 269. Rule 174(b) provides as
follows:
 
(b) Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a
separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or
of any number of claims, cross-claims, counterclaims, third-party claims, or issues.


Tex. R. Civ. P. 174(b).
            The decision in Johnson antedates by some eight years the 1995 amendments to Texas Civil
Practice and Remedies Code section 41.009, the statute specifically concerning bifurcated trials. The
discretionary language of Rule 174(b) sharply contrasts with the mandatory language of Section
41.009.
            The pertinent provisions of section 41.009 were enacted in the legislative session
immediately following the supreme court’s opinion in Moriel, another case cited by Appellees. In
Moriel, the supreme court said that if the trial court is presented with a timely motion to bifurcate
the amount of punitive damages from the remaining issues at trial, the court shall grant said motion. 
Id. at 30. 
            In apparent response to the Moriel decision, the legislature amended section 41.009 to define
“timely,” providing that “a motion under this subsection shall be made prior to the voir dire
examination of the jury or at a time specified by a pretrial court order. . . .” Tex. Civ. Prac. & Rem.
Code § 41.009(a). The trial court made no applicable pretrial order in this case, and Appellees did
not file their motion until two days after the voir dire of the jury.
            “Shall” is an imperative term by ordinary meaning and requires the performance of the act
to be performed. It should be treated as a mandatory term, unless it is apparent that the legislature
intended otherwise. Balios v. Tex. Dep’t of Pub. Safety, 733 S.W.2d 308, 310 (Tex. App.–Amarillo
1987, writ ref’d). Texas Government Code section 311.016(2) states that the use of the word “shall”
imposes a duty. Tex. Gov’t Code Ann. § 311.016(2) (Vernon 2005). We have found no authority
indicating that the legislature, in enacting the provision, did not intend “shall” as a mandate. 
Therefore, we conclude the trial court erred in granting the untimely filed motion to bifurcate.
            Mackey argues that she was harmed by the trial judge’s order granting a bifurcated trial,
because documents were thereby excluded from evidence showing the discrepancy between U.P.’s
alleged policy of not tolerating “even a hint of sexual discrimination” and its actual practice. The
first document prepared by Richard Upshaw, the chief operating officer of the company, stated that
Greg Johnson was discharged because “after counciling [sic] him and cautioning him to avoid all
appearances of sexual harassment, I received additional complaints of more recent activity in this
regard from other current employees.” Another excluded document shows that Ron Smith lost his
job because he failed to deliver a bank deposit to the bank. A third document reflects that Mackey’s
last manager, Daryl Friend, was discharged because of accusations of sexual harassment over three
years after Mackey left the company.
            The record, however, shows that most of the evidence contained in the excluded documents
was elicited on cross-examination. Both Richard Upshaw and Greg Johnson testified that Greg
Johnson’s employment was terminated because of allegations of sexual harassment. Both Richard
Upshaw and Ron Smith acknowledged that Ron Smith was fired for misconduct in not getting to the
bank with an $800 deposit.
            Daryl Friend was the manager on duty when Richard Upshaw ordered him to fire Mackey.
According to his discharge summary, which the trial judge excluded, Upshaw fired Friend because
of four accusations of sexual harassment brought in December of 1994, over three years after
Mackey left the company. Mackey did not accuse Friend of sexual harassment, and he was not a
defendant in this case nor was he employed by U.P. at the time of trial. He played no part in the
decision to terminate Mackey’s employment. In substance, he testified that there was a policy
against sexual harassment at U.P., which was discussed at store meetings, and that he had never
observed any sexually harassing or offensive conduct directed at Mackey during the time that they
were both employed at the same Taco Bell location. Since his discharge occurred over three years
after the events alleged as the bases of this suit, evidence of the reasons for Friend’s termination has
only a limited tendency to prove a consequential fact. The trial judge correctly concluded that the
probative value of the evidence of the contents of Friend’s discharge summary was substantially
outweighed by its probable prejudicial effect. The bifurcation ruling did not cause the exclusion of
this evidence.
            The evidence of other allegations contained in the excluded documents relating to Johnson
and Smith was, on the whole, cumulative of similar evidence elicited in testimony. The excluded
document regarding other accusations against Friend would have been undeniably prejudicial while
possessing little or no relevance. Therefore, although we have determined that the trial court erred
in granting a bifurcated trial, we conclude that the error did not cause the rendition of an improper
judgment. See Tex. R. App. P. 44.1. Mackey’s second issue is overruled.
 
 
Directed Verdict
            In her third issue, Mackey contends that the trial court erred in granting a directed verdict
against her as to her cause of action in which she alleged that the merger of U.P. and JDS
Restaurants was undertaken “with intent to hinder, delay, or defraud her.” U.P. and JDS merged in
1996, five years after Upshaw had her fired from her job at U.P. Mackey filed her suit against U.P.
four years before the merger. Upshaw controlled both entities. As a result of the merger agreement,
all of U.P.’s assets were transferred to JDS Restaurants. At the time of trial, U.P. had no assets.
            A transfer made or an obligation incurred by a debtor is fraudulent as to a present or future
creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay,
or defraud any creditor of the debtor. Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2002).
            A court may instruct a verdict if no evidence of probative force raises a fact issue on the
material questions in the suit. Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). 
In reviewing the granting of a directed verdict, the appellate court must determine whether there is
any evidence of probative force raising a fact issue on the material questions presented. Id. The
reviewing court considers all of the evidence in the light most favorable to the party against whom
the verdict was directed, disregarding all contrary evidence and inferences, and giving the losing
party the benefit of all reasonable inferences created by the evidence. Id. If there is any evidence
supporting the theory of recovery, the case must be reversed and remanded for a determination of
the issue by the fact finder. Id.
            The merger occurred four years after Mackey filed her suit. The Certificate of Merger and
Upshaw’s testimony showed that, under the terms of the merger, JDS agreed to assume all of U.P.’s
liabilities, including any liability resulting from Mackey’s lawsuit. There was no evidence presented
at trial that U.P., JDS, or Upshaw acted with intent to hinder, delay, or defraud Mackey. All of the
evidence indicates that the merger was for legitimate business purposes and did not adversely affect
Mackey’s recovery of her claim against U.P. The trial judge did not err in granting the directed
verdict on this cause. Mackey’s third issue is overruled.
 
Exclusion of Other Acts of Sexual Harassment
            In her fourth issue, Mackey maintains “[t]he trial court erred in not permitting evidence
regarding other acts of sexual harassment.”
            An appellate court reviews a trial court’s evidentiary rulings for abuse of discretion. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its
discretion when it acts without regard for any guiding principles. City of Brownsville v. Alvarado, 
897 S.W.2d 750, 754 (Tex. 1995). Even if evidence is improperly excluded or admitted, the
reviewing court should not reverse unless the ruling probably caused the rendition of an improper
judgment. Tex. R. App. P. 44.1(a).
            Mackey brought a hostile-work-environment claim of sexual harassment. “Harassment
directed at other members of the same protected group is relevant to show a hostile environment.” 
Soto v. El Paso Nat. Gas Co., 942 S.W.2d 671, 678 (Tex. App.–El Paso 1997, writ denied) (citing
Waltman v. Int’l Paper Co., 875 F.2d 468, 477 (5th Cir. 1989)). Evidence tending to show a
supervisor’s harassment of other women working alongside the plaintiff is directly relevant to the
question whether there was a hostile or offensive work environment. Vinson v. Taylor, 753 F.2d
141, 146 (D.C. Cir. 1985), aff’d sub nom., Meritor Sav. Bank v. Vinson, 477 U.S. 57, 106 S. Ct.
2399, 91 L. Ed. 2d 49 (1986). But evidence of co-employees’ alleged experiences with
discrimination by the same employer are not admissible unless there exists a close relationship of
time, location, and decision-makers among the various employees. See Wyvill v. United Cos. Life
Ins. Co., 212 F.3d 296, 302 (5th Cir. 2000). Testimony offered about alleged harassing events
occurring later than the termination of the plaintiff’s employment is “even less relevant and of less
probative value than evidence of prior bad acts generally, because the logical relationship between
the circumstances of the character testimony and the employer’s decision to terminate is attenuated.” 
Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999).
            Mackey complains specifically that the trial court erred in not permitting her to examine
Upshaw regarding the allegations of sexual harassment against Daryl Friend and other complaints
brought by Natasha Horn against Greg Johnson. We have already noted that the incidents alleged
against Friend occurred over three years after Mackey left Taco Bell and have little, if any, probative
value in showing the work environment when Mackey worked there. The trial judge correctly
excluded evidence of the claims against Friend as substantially more prejudicial than probative.
            Natasha Horn’s complaints against Greg Johnson arose over a year after Mackey’s discharge. 
Mackey and Horn worked at the same location for approximately one month. Evidence of Horn’s
claims would have had only limited value in proving a hostile environment when Mackey worked
there, although the potentially prejudicial effect is undeniable. Moreover, while Horn’s claims were
not mentioned specifically, Greg Johnson acknowledged in his testimony that Upshaw fired him
because of other allegations of sexual harassment against him made one and a half years after
Mackey’s departure.
            Mackey also complains that the trial judge erred in denying admission of the documents
showing that Greg Johnson was discharged because of allegations of sexual harassment and Ron
Smith for failing to get a deposit to the bank. However, in their testimony, both Johnson and Smith
acknowledged the reasons for their termination given in the excluded documents. The trial court’s
error, if any, in excluding these documents did not cause an improper verdict. 
            All of the additional acts offered by Mackey and excluded by the trial court occurred after
Mackey’s discharge. The excluded evidence, in our view, would have had negligible relevance to
the question of the workplace environment during Mackey’s tenure. The rationale underlying Texas
Rule of Evidence 404(b) is the assumption that evidence of other bad acts is extremely prejudicial. 
Even if relevant to prove one of the exceptions to the rule, the trial judge may still disallow relevant
evidence if its prejudicial effect substantially outweighs its probative value. Tex. R. Evid. 403. The
trial court did not abuse its discretion in determining that the evidence of other acts of sexual
harassment that Mackey sought to introduce was substantially more prejudicial than probative. 
Mackey’s fourth issue is overruled.
 
Admission of a Report of Investigation
as a Record of Regularly Conducted Activity

            In her fifth issue, Mackey contends the trial court erred in admitting into evidence, under the
records of regularly conducted activity exception to the hearsay rule, the investigative report of F.R.
Houck of Industrial Relations Assistance, Inc. U.P. hired Houck to prepare the report in response
to Mackey’s complaint of sexual harassment filed with the Texas Commission of Human Rights. 
Houck’s report consists of eighty-one pages and contains the written statements of U.P. employees,
employee consultation records, hiring applications, company policies, and other documents. The
report also contains Houck’s summaries of his interviews with employees and former employees
listed as supporting witnesses by Mackey in her complaint to the Commission, as well as his
conclusion that U.P. maintained a strictly-enforced policy against sexual harassment and that
Mackey’s claims were baseless.
Records of Regularly Conducted Activity
            The predicate for the introduction of a record under the business records exception, Texas
Rule of Evidence 803(6), requires proof (1) that the record was made by or from information
transmitted by a person with personal knowledge of the events or conditions recorded, (2) that the
record was made at or near the time of the events or conditions recorded, and (3) that it was in the
ordinary course of the reporting entity’s business to make and keep such records. Perry v. State, 957
S.W. 894, 899 (Tex. App.–Texarkana 1997, pet. ref’d); see also Tex. R. Evid. 803(6). The proffer
of evidence under the regularly conducted activities exception often presents a trial court with the
problem of double hearsay. If the record contains some hearsay statements, those statements are not
admissible unless they fit some other exception to the hearsay rule. Id. at 899-900. The regularly
conducted activities exception does not protect hearsay within hearsay. Id. There must also be no
indication that the source of information or the method of preparation is untrustworthy. Id. at 899. 
Therefore, entries must be made routinely in the regular course of the entity’s activity and not
irregularly or sporadically. See Redkin Lab., Inc. v. Levin, 843 F.2d 226, 229 (6th Cir. 1988); Tex.
Employer’s Ins. Ass’n v. Sauceda, 636 S.W.2d 494, 499 (Tex. App.–San Antonio 1982, no writ). 
Thus, a document prepared for purposes of litigation is not admissible under this exception because
it lacks trustworthiness. Paddock v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984);
Sauceda, 636 S.W.2d at 499. This is because “where the only function that the report serves is to
assist in litigation or its preparation, many of the normal checks upon the accuracy of business
records are not operative.” Michael J. McCormick on Evidence § 288, at 272 n.33 (John W.
Strong 4th ed. 1992).
            A threshold question is whether Mackey preserved her complaint for review. To preserve
a complaint, a party must make a timely and specific objection that is followed by an adverse ruling. 
Tex. R. App. P. 33.1. A specific objection is one that enables the trial court to understand the precise
grounds so as to make an informed ruling and affords the offering party an opportunity to remedy
the defect, if possible. McKinney v. Nat’l Union Fire Ins. Co., 772 S.W.2d 72, 74 (Tex. 1989).
            Mackey objected to Appellees’ exhibit 33 (Houck’s report to the Texas Human Rights
Commission) on the basis of hearsay and “as far as the business record affidavit of being sexually
harassed.” Appellees insist the objection lacked the requisite specificity.
            We construe Mackey’s objection to be that the investigative report and response to the Texas
Human Rights Commission prepared by Houck was not kept in the regular course of U.P.’s business. 
While not a model of precision, we shall consider Mackey’s objection sufficient to preserve error. 
See Kuczaj v. State, 848 S.W.2d 284, 287-88 (Tex. App.–Fort Worth 1993, no writ).
            The nature of the record in question and the circumstances under which it was prepared
indicate that it was not the regular practice of U.P. to make such a report. While it is apparent that
this was not the only sexual harassment complaint lodged against U.P., it is inconceivable that the
compilation of responses to sexual harassment complaints are regularly made by U.P. Rather, they
are prepared, as required, in an adversarial setting and in anticipation of litigation. Exhibit 33 would
not have been created but for the request for documentation and information from the Texas
Commission on Human Rights. The report was prepared by an industrial relations counselor
specially employed to answer the Commission’s request. Therefore, it lacks the high probability of
trustworthiness that attaches to records that are regularly kept and routinely relied on. Because the
report was prepared in an adversarial setting and was not a record regularly kept and routinely relied
on by U.P., we conclude the trial court erred in admitting it in evidence.
            We may not reverse the judgment, however, unless the error probably caused the rendition
of an improper judgment. Tex. R. App. P. 44.1. To obtain reversal of a judgment, an appellant must
not only show that court committed error, but also that the judgment turns on the particular evidence
admitted or excluded. Alvarado, 897 S.W.2d at 753-54. The appellate court determines whether
the case turns on the evidence admitted or excluded by reviewing the entire record. Id. at 754.
            Mackey complains specifically about Houck’s cover letter to the Texas Commission on
Human Rights in which he states that the witnesses named on Mackey’s supporting witness list
denied that such events happened, and that “they all stated in one form or another that the events
[alleged by Mackey] were highly unlikely, and possibly fabricated.” Mackey also complains about
the statement of Richard Upshaw that was part of the report. Upshaw’s statement also contains
prejudicial hearsay on hearsay, and it concludes with a glowing expression of confidence in Greg
Johnson. The report and its attachments contain several hearsay and hearsay upon hearsay
statements critical of Mackey and her motive in filing suit. However, most of what was contained
in the report was also elicited in the testimony of witnesses. Considering the record as a whole, we
conclude that the jury’s verdict did not turn on the erroneous admission of the exhibit. Mackey’s
fifth issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
 
                                                                                                    BILL BASS 
                                                                                                            Justice
 
 
 
Opinion delivered July 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.

















(PUBLISH)